Hon. Daniel M. Hanlon (Ret.)
JAMS
Two Embarcadero Center
Suite 1100
San Francisco CA, 94111
Phone 415-982-5267
Fax 415-982-5287

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, a municipal corporation and a political subdivision of the State of California and DENNIS J. HERRERA, City Attorney for San Francisco, on behalf of the PEOPLE OF THE STATE OF CALIFORNIA, | **Case No. C 02 5286 (EWC) CW (EMC)** |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL DOCUMENTS WITHHELD UNDER CLAIMS OF PRIVILEGE OR WORK PRODUCT PROTECTION RESPONSIVE TO DEFENDANT'S FIRST REQUEST TO PRODUCE** |
| v. | (Docket No. 554) |
| TUTOR-SALIBA CORPORATION; a California corporation; TUTOR-SALIBA PERINI & BUCKLEY, J.V., a California joint venture; PERINI CORPORATION, a Massachusetts corporation; BUCKLEY & COMPANY INC., a Pennsylvania corporation; AMERICAN HOME INSURANCE COMPANY, a New York corporation; FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a Maryland corporation; SWISS REINSURANCE AMERICA CORPORATION, a New York corporation; THE AETNA CASUALTY AND SURETY COMPANY, a Connecticut corporation; and RONALD N. TUTOR, | |
| Defendants. | |

On April 6, 2005, Defendants Tutor-Saliba Corporation, et al. (herein collectively referred to as the "Tutor-Saliba" of Defendants), filed their "Motion to Compel Production of Documents Withheld Under Invalid or Defective Claims of Privilege or Work Product Protection Responsive to Defendants' First Request to Produce". Plaintiffs City and County of San Francisco, et al., (herein "CCSF") filed their opposition on April 21, 2005, and Tutor-Saliba's Reply brief was filed May 2, 2005. A hearing was held on May 3, 2005, the Honorable Daniel M. Hanlon (Ret.), Special Master, presiding.

After full consideration of all papers filed and arguments made, the Special Master hereby issues the following order:

## I.  **Summary of Defendants' Motion**

Tutor-Saliba seeks to compel the production of more than 1800 documents it claims have been improperly withheld under claims of attorney client privilege and/or the work product doctrine in response to Tutor-Saliba's First Request to Produce. The withheld documents are identified on multiple privilege logs created by Plaintiffs during a rolling production of documents. Copies of the subject privilege logs are attached to the Declaration of Farzad Tabatabai in Support of Defendants' Motion to Compel, dated 4/6/05, (herein "Tabatabai Dec."), EXS. 3-18.

### A.  *Attorney Client Privilege*

#### 1.  *Adequacy of Privilege Logs*

In its opening brief on the motion, Defendants first dispute the adequacy of Plaintiffs' privilege logs, arguing that the logs fail to explain how communications between the City Attorney's Office (CAO) and San Francisco International Airport (SFIA) construction managers are privileged. Defendants also assert that Plaintiffs' logs fail to establish that the documents concern the seeking of legal advice or were communications between a client and an attorney acting in his professional capacity related to legal rather than business matters, and were at the clients' insistence permanently protected. Defendants accuse Plaintiffs of withholding entire categories of documents under a single privilege log entry, thus failing to satisfy the specificity required in a privilege log under both federal case law and Judge Chen's Standing Order for Civil Practice in Cases Assigned for All Purposes.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL           2
DOCUMENTS WITHHELD UNDER CLAIMS OF PRIVILEGE OR WORK PRODUCT PROTECTION
RESPONSIVE TO DEFENDANT'S FIRST REQUEST TO PRODUCE

2. *Waiver*

Next Defendants argue that even if the communications between the CAO and the SFIA were in fact privileged, Plaintiffs fail to establish how certain documents remain privileged when those documents were shared with a third party not bound by the privilege, or who otherwise shows disregard for the privilege by making the information public. Tutor-Saliba Defendants claim that Plaintiffs have disclosed privileged documents to various other construction professionals employed by SFIA and identifies a 4/26/99 memo drafted by "Tom Kardos (SFIA), Gregg Wilcox (Luster/GKO, with Kris Cox, Esq. (CAO))" as an example of a document shared with third parties wherein the privilege was waived. *See* Defendants' Opening Brief at 11-12 ("Supplemental CCSF Privilege Log January 20, 21, 2004" (Tabatabai Decl. Exh. 4)). Defendants further argue that Plaintiffs' logs fail to explain how meeting minutes created by or in the presence of independent third parties can be privileged. And finally, in this category, Tutor Saliba argues that Plaintiffs have waived any privilege or work product protection for documents obtained by the FBI under "forthwith subpoenas."

3. *Business v. Legal Advice*

Defendants next argue that the involvement of the CAO in the administration of the airport projects as a business advisor precludes formation of the attorney client privilege. Tutor-Saliba argues that the CAO was exhaustively and intimately involved in the ongoing, daily business affairs of CCSF during the bid process, contract negotiations, construction and development of the airport projects and that by acting as a business agent, rather than legal counsel, any communication between the CAO and the various individuals and entities working on behalf of CCSF and SFIA did not concern the seeking of legal advice, was not between a client and an attorney acting in his professional capacity, and was unrelated to legal matters. Defendants do not identify particular withheld documents they believe involve business rather than legal advice, but instead argue that all withheld documents must be produced since the CAO acted as a business rather than legal agent and no attorney-client relationship was ever formed.

4. *Not prepared in anticipation of litigation*

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL
DOCUMENTS WITHHELD UNDER CLAIMS OF PRIVILEGE OR WORK PRODUCT PROTECTION
RESPONSIVE TO DEFENDANT'S FIRST REQUEST TO PRODUCE

3

Tutor Saliba also argues that even if some of the withheld documents have some legal purpose in addition to their business purpose, they are nonetheless discoverable because they were prepared without regard to any litigation. Citing Judge Chen's order in *Visa U.S.A. Inc. v. First Data Corp.*, 2004 WL 1878209, *3-4 (N.D. Cal. 2004), Defendants argue that while courts generally employ a primary or predominate purpose test to determine if a document contains legal advice, when the issue is whether the character of the advice is more business than legal in character, courts have adopted a "because of anticipated litigation standard," to determine if an attorney's advice is legal and subject to the privilege. Defendants argue that Plaintiffs are unable to establish that they would not have prepared the withheld documents "but for the prospect of litigation."

### 5. *Fairness Doctrine*

Finally with regard to attorney client privilege, Defendants argue that the documents cannot be withheld under the "fairness doctrine". Specifically, Defendants argue that because Plaintiffs claim that their approval of various change orders was fraudulently procured and that Plaintiffs justifiably relied on representations by the Tutor-Saliba defendants in approving those change orders, Plaintiffs put their collective state of mind at the time of the transaction at issue. Defendants claim that Plaintiffs have similarly put their collective state of mind at issue in their other fraud and false claims allegations concerning the MBE/DBE program, the bids, and the schedules. Defendants claim that under the "fairness doctrine", they are entitled to know what SFIA knew and was told about the details of the change orders at the time SFIA approved them, as well as what they knew about the MBE/DBE program, the bids and the schedules including what they learned from counsel. Defendants claim that by putting their state of mind at issue, Plaintiffs have waived the right to hide SFIA's knowledge of the details of these transactions behind the attorney client privilege. They assert that this is particularly true in this case where SFIA's counsel was directly involved in the review and approval of the Tutor-Saliba Defendants' change order submissions. Defendants also state that Plaintiffs' state of mind is at issue with regard to Tutor Saliba's defenses to CCSF's claims – especially SFIA and its counsel's awareness

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL
DOCUMENTS WITHHELD UNDER CLAIMS OF PRIVILEGE OR WORK PRODUCT PROTECTION
RESPONSIVE TO DEFENDANT'S FIRST REQUEST TO PRODUCE

4

of potential SFIA claims against the Tutor Defendants on the date that Defendants claim they and Plaintiffs signed a settlement agreement and covenant not to sue.

B.   *Work Product*

With regard to Plaintiffs' assertion of the work product doctrine, Defendants argue that Plaintiffs cannot prove that the withheld documents were prepared "in anticipation of litigation" or "because of" the prospect of litigation and thus they do not qualify from protection against discovery. Defendants also argue that to be protected by work product, the documents cannot have been prepared in the ordinary course of business because then they would have been created regardless of any threat of litigation. Defendants argue that here, because the CAO was routinely involved in the SFIA's administration of the Airport projects, CAO would have prepared the withheld documents with or without any prospect of litigation as part of their jobs as contract administrators. Defendants cite to withheld documents that predate the Airport contracts stating "[o]bviously no litigation was anticipated years before the parties had even signed the contracts now at issue." Defendant's Opening Brief at 22:8-9.

Alternatively, Defendants argue that even if the withheld documents are work product, they are discoverable because Defendants show (1) a substantial need for the materials in the preparation of their case, and (2) an inability, without undue hardship, to obtain the substantial equivalent of the materials by other means. Defendants argue that they meet both prongs of the test:  (1) they need the documents at issue to establish Plaintiffs' knowledge of those facts that they claim Defendants hid from them; and (2) this case is extremely complex, concerning millions of records, and because Plaintiffs and their attorneys have presumably already done the investigation that uncovered the alleged frauds of which they complain and have attested to the fact that specific evidence supports their claims by filing a federal lawsuit, "there is no justification for making the Defendants look through millions of records and depose hundreds of witnesses to recreate the fruits of an 'investigation' that Plaintiffs allegedly have already completed in preparing to bring this lawsuit." Defendants' Opening Brief at 24:10-16.

//

//

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL DOCUMENTS WITHHELD UNDER CLAIMS OF PRIVILEGE OR WORK PRODUCT PROTECTION RESPONSIVE TO DEFENDANT'S FIRST REQUEST TO PRODUCE

5

## Discussion

### I.     Whether Plaintiffs' Privilege Logs are Adequate

Documents meeting all the following requirements are protected from discovery by the attorney-client privilege:

> (1) When legal advice of any kind is sought (2) from a professional legal advisor in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal advisor (8) unless the protection be waived.

*United States v. Martin* (9th Cir. 2002) 278 F.3d 988, 999. The party asserting the attorney client privilege has the burden of establishing all of the above elements and, even if established, the privilege is strictly construed. *Id.* at 999-1000.

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

Fed. R. Civ. Proc. 26(b)(5).

The Ninth Circuit has found privilege logs sufficiently descriptive if the entries each identify the following:(a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated. *Dole v. Milonas* (9th Cir. 1989) 889 F.2d 885, 888, n.3; *In re Grand Jury Investigation* (9th Cir. 1992) 974 F.2d 1068, 1071; *see also O'Connor v. Boeing N.Am., Inc.* (C.D. Cal. 1999) 185 F.R.D. 272, 280 (stating that Model Form 11: A, set forth in The Rutter Group Practice Guide, Federal Civil Procedure Before Trial, correctly and adequately lists all the information that should be set forth on the privilege log, including the title or position of the author and recipient of the document); *Walker v. County of Contra Costa*, 2004 U.S. Dist. LEXIS 25285 at *4 (citing requirements in *Dole* and *In re Grand Jury Investigation*); *Johnson & Johnston v. R.E. Serv. Co.*, 2004 U.S. Dist. LEXIS 26973, *10

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL DOCUMENTS WITHHELD UNDER CLAIMS OF PRIVILEGE OR WORK PRODUCT PROTECTION RESPONSIVE TO DEFENDANT'S FIRST REQUEST TO PRODUCE                    6

(same).  In *Dole v. Milonas, supra,* the court found that a party need only identify the general type of document, such as a "letter" or "memorandum" for a privilege log to be sufficiently informative regarding the "nature of the document." 889 F.2d at 888 n.3, 890.

In *In re Grand Jury Investigation,* the Court found that while the privilege log at issue in the case satisfied four of the five *Dole* requirements, the log failed to properly identify "(d) all persons or entities known to have been furnished the document or informed of its substance." The Ninth Circuit found, however, that "[w]hatever questions the Corporation's log might leave open with regard to whom the documents were shown or were intended to be show are answered to our satisfaction by the affidavits of the attorneys responsible for preparing the documents." 974 F.2d at 1071.

Judge Chen's Standing Order for Civil Practice in Cases Assigned for All Purposes to Magistrate Judge Edward M. Chen, is more specific than *Dole v. Milonas*.  It states in relevant part as follows:

> Privilege logs shall be promptly provided and must be sufficiently detailed and informative to justify the privilege.  *See* Fed.R.Civ.P. 26(b)(5).  No generalized claims of privilege or work product protection shall be permitted.  With respect to each communication for which a claim of privilege or work product is made, the asserting party must at the time its assertion identify:  (a) all persons making and receiving the privileged or protected communication; (b) the steps taken to ensure the confidentiality of the communication, including affirmation that no unauthorized persons have received the communication; (c) the date of the communication; and (d) the subject matter of the communication.

Standing Order, at § 13 (underline added) (attached as EX. C to Declaration of Rafal Ofierski in Opposition to Defendants' Motion to Compel, dated 4/21/05, (herein "Ofierski Dec.")).

Here, many of Plaintiffs' log entries do not meet the criteria set forth in Ninth Circuit case law or Judge Chen's standing order.  Typical entries on Plaintiffs' logs are as follows:

//

//

//

//

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL
DOCUMENTS WITHHELD UNDER CLAIMS OF PRIVILEGE OR WORK PRODUCT PROTECTION
RESPONSIVE TO DEFENDANT'S FIRST REQUEST TO PRODUCE

| Box | Date: | Type: | Author: | Recipient: | CC: | # Pages | Description/ Comments | Privilege |
|---|---|---|---|---|---|---|---|---|
| 39 | 6/24/1999 | Draft Letter | Ivar Satero (SFIA) | Thomas Kardos (SFIA), Tom Rodrigues (SFIA) | Richard Levallee (SFIA), Ed Schaffarczyk (SFIA), Kris Cox, Esq. (CAO) | 9 | Discusses request for legal advice | AC |
| 98 | Unknown | Email | John Michalka (SFOA) | Kris Cox, Esq. (CAO), Ed Schaffarczyk (SFIA) | Robert Doane (SFIA), John Dragueskdu (SFOA), Gary Katcher (SFOA) | 4 | Communicates request for legal advice | AC, WP |

See EX 5, Tabatabai Dec., at pp. 6, 7. While these types of entries may appear at first to satisfy the *Dole v. Milanos* requirements, as in the log at issue in *In re Grand Jury Investigation,* they do not indicate "(d) all persons or entities known to have been furnished the document or informed of its substance." And here, unlike in *In re Grand Jury Investigation,* we do not have sworn declarations from all attorneys or others involved in preparing the documents regarding whether others outside the recipient list were either given the document or informed of its substance or whether the document was intended to be kept confidential. While Plaintiffs have provided declarations from City Attorneys Kris Cox and Gretchen Nicholson, there are no declarations from other city attorneys or outside counsel, or from other authors of various documents including John Michalka and Ivar Satero, authors of the documents in the table above. As will be discussed in more detail below, for documents authored by Plaintiffs' attorneys other than Mr. Cox and Ms. Nicholson, it is unclear from the logs or Plaintiffs' submission in opposition to this motion that the author intended the communication be kept confidential. It is also unclear that the recipients did indeed keep the documents confidential. Regarding documents authored by third party construction managers at SFOA, it is unclear that those documents were intended to be kept confidential or indeed were kept confidential.

Moreover, many of the log entries do not satisfy the requirements set forth in Judge Chen's Standing Order. Specifically, for many of the log entries there is no applicable declaration

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL DOCUMENTS WITHHELD UNDER CLAIMS OF PRIVILEGE OR WORK PRODUCT PROTECTION RESPONSIVE TO DEFENDANT'S FIRST REQUEST TO PRODUCE

8

filed by Plaintiffs which indicates "(b) the steps taken to ensure the confidentiality of the communication, including affirmation that no unauthorized persons have received the communication." Some log entries also fail to indicate "(d) the subject matter of the communication", but instead merely provide a generic description such as "request for legal advice."

Thus, Plaintiffs are hereby ordered to prepare amended privilege logs, accompanied by additional declarations sufficient to establish "the steps taken to ensure the confidentiality of the communication, including affirmation that no unauthorized persons have received the communication." This will ensure compliance with both Judge Chen's Standing Order and the Ninth Circuit requirement articulated in *Dole* and *In re Grand Jury Investigation* that both the Court and Defendant know "(d) all persons or entities known to have been furnished the document or informed of its substance." *See Dole, supra,* 889 F.2d at 888, n.3; *In re Grand Jury Investigation, supra,* 974 F.2d at 1071. All documents for which Plaintiffs cannot meet the above criteria shall be produced.

And finally, under the clear dictates of Ninth Circuit law and Judge Chen's Standing Order, Plaintiffs must identify and provide the requisite information for each document individually. For example, Boxes 132 and 133 are withheld in their entirety, without specific entries for each of the documents within those boxes. *See* EX 4 to Tabatabai Dec. A log entry covering an entire box of documents is insufficient under both Ninth Circuit law and Judge Chen's Standing Order. CCSF must produce a privilege log setting forth each and every document contained in these boxes that is withheld. This order applies to any other entry that relates to more than one document.

## II.   Whether Attorneys at the CAO Provided Business Rather than Legal Advice

Under Rule 501 of the Federal Rules of Evidence, federal common law governs the availability and scope of evidentiary privileges in actions where federal law supplies the rules of decision. Fed. R. Evid. 501. The attorney-client privilege "has been recognized as 'the oldest of the privileges for confidential communications known to the common law.'" *Gomez v. Vernon* (9th Cir.) 255 F.3d 1118, 1131 (quoting *Upjohn Co. v. United States* (1981) 449 U.S. 383, 389),

*cert. denied,* 534 U.S. 1066 (2001). The importance of the privilege lies in the need "to encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.'" *Swidler & Berlin v. United States* (1998) 524 U.S. 399, 403 (quoting *Upjohn,* 449 U.S. at 389). Consequently, confidential communication between an attorney and his or her client made for the purpose of obtaining legal advice are generally shielded form disclosure during discovery. *See Gomez,* 255 F.3d at 1131.

Advice regarding matters of business strategy, however, is not shielded by the attorney-client privilege simply because it happens to be provided by a lawyer. It is essential to distinguish between legal advice, which is privileged, and advice concerning matters of business strategy that happens to be provided by a lawyer, which is not. For the privilege to apply, "legal advice must predominate for the communication to be protected ..." *North Pacifica, LLC v. City of Pacifica,* 274 F.Supp. 2d 1118, 1127 (N.D. Cal. 2003) (Chen, Mag. J.) (quotation marks and alterations omitted); *see also United States v. Chevron Texaco Corp.* (N.D. Cal. 2001) 241 F.Supp. 2d 1118, 1127 ("In order to show that a communication relates to legal advice, the proponent of the privilege must demonstrate that the primary purpose of the communication was securing legal advice.").

Here, Defendants claim that the City Attorney had many non-legal functions including review of bids, good faith documentation, contract administration, change order proposals, and change orders. *See* EX 27 to Tabatabai Dec., letter from Farzad Tabatabai to Gayle Gribble, dated 8//13/04, at 2. In support of their claim, Defendants offer the declarations of Jack Frost and John Dragonette, both previously submitted in support of a prior Motion to Compel. The Frost and Dragonette Declarations are attached to Defendants' Request for Judicial Notice ("Defs' RJN") as Tabs 2 and 3. In his declaration, Mr. Frost states that he was told on numerous occasions by representatives of the Airport that all major issues regarding changes to the contracts, especially change orders, had to be coordinated through and approved by the CAO. Frost Dec., ¶ 4 (Defs' RJN, Tab 2). Defendants cite to pages 5-7 of Mr. Dragonette's declaration which references attached exhibits 14-27. Defendants' Opening Brief at 5,n.3. The exhibits to

Mr. Dragonette's declaration include letters concerning public records requests, subpoenas and the CAO response to same, lists of contractors provided to the CAO, requests for documents from counsel for California's Labor Commissioner, and correspondence related to a tolling agreement. Dragonette Dec., EXS. 14-27 (Defs' RJN, Tab 3).

Also in support of their claim, Defendants offer two documents attached to the Declaration of Nomi Castle in Support of Defendants' Reply Brief ("Castle Dec."). One is an email from Edgar Schaffarczyk to John Draguesku sending back change orders 133 and 133A unsigned. There is a handwritten note on the printed email stating, "We cannot pay any more – if requested ... We may not end up with a signed change order – denied by Audit/Legal. Take backs ...? Stay tuned." Castle Dec. EX. 5. The second document is a memorandum from Richard Hocking to Dennis Parker, at SFOA regarding "Withholding of Deductible from Final Payment due to Sub-Contractor Claims." The body of the memo says that SFIA Legal Department is directing SFOA to withhold payments of $20,000, and $10,000 from various subcontractors. Castle Dec. EX. 6.

In response, CCSF provides declarations from two Deputy City Attorneys, one former and one current, who have at various times represented the Airport. Both Deputies state that they did not give business, but rather legal advice. Kris Cox, a former deputy city attorney states:

"3. It was not a part of my job as a Deputy City Attorney to provide business advice, construction advice or any kind of advice other than legal advice to the City or its constituent departments. My job was solely to provide legal advice and representation, and that is in fact what I endeavored to do. I did not give business advice or other non-legal advice to the Airport."

4. ... Some examples of the kinds of matters on which I provided advice to the Airport are the process and legal requirements a contractor must meet in order to substitute subcontractors for those listed in the construction contract, the legal requirements to make a contract change valid and binding, legally effective release language, contract language drafting and interpretation, owners' legal rights and obligations with respect to evaluating work for contract conformance and owners' legal remedies with respect to nonconforming work. I gave legal advice to the Airport in connection with proposed changes to the Airport's contracts, including its contracts with Tutor-Saliba."

...

6. ..."Although the legal advice that I and others from the City Attorney's Office provided in connection with the Tutor-Saliba contracts undoubtedly assisted the Airport in

making its business decisions, the advice we provided was legal in nature. Approving change orders and various other documents as to form, which is something the City Attorneys' Office does, does not entail giving business advice. It involves making sure certain formal requirements, that are legally required for the particular type of document or the transaction it represents, have been met."

Declaration of Kris A. Cox re Plaintiffs' Claims of Privilege, dated 4/20/05, (herein "Cox Dec."), at ¶¶ 3, 4, 6. Similarly, Gretchen Nicholson, a Deputy City Attorney since 1977 states

> 2. ... "Generally, I performed legal service in connection with Master Plan contracts from 'cradle to grave' – during initial planning stages, through the process of preparing requests for proposals, bid packages, and individual contracts, through the course of construction of projects called for by particular contracts, continuing into the process of closing out these contacts, and then on as-needed basis following contract closeout."
>
> ...
>
> 5. In the course of performing my duties as an Airport-assigned deputy city attorney, it has not been my practice of the practice of any of the Deputy City Attorneys with whom I have worked to provide business advice to any of the Airport's employees or representatives. Instead, it has been our practice to identify and separate business issues from legal issues and then provide the Airport with legal advice that allows them to exercise their own best business judgment to reach and implement business decisions.

Declaration of Gretchen Nicholson in Opposition to Defendants' Motion to Compel Documents Withheld by Plaintiffs based on Privilege and Work Product, dated 4/20/05, (herein "Nicholson Dec."), at ¶ 2, 5.

If a person hires a lawyer for advice, there is a rebuttable presumption that the lawyer is hired "as such" to give "legal advice". *United States v. Chen* (9th Cir. 1996) 99 F.3d 1495, 1501. The presumption is rebutted when the facts show that the lawyer was "employed without reference to his knowledge and discretion in the law." *Id.*, citing 8 Wigmore, supra, § 2296, at 566-67. "[A] matter committed to a professional legal adviser is prima facie so committed for the sake of the legal advice which may be more or less desirable for some aspect of the matter, and is therefore within the privilege unless it clearly appears to be lacking in aspects requiring legal advice." *Id.*

Here, the Special Master does not conclude that the CAO was acting as a business, rather

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL DOCUMENTS WITHHELD UNDER CLAIMS OF PRIVILEGE OR WORK PRODUCT PROTECTION RESPONSIVE TO DEFENDANT'S FIRST REQUEST TO PRODUCE

12

than a legal, advisor. The documents cited by Defendants, attached to Mr. Dragonette's declaration, do no support such a finding. Nor do the two documents attached to the Castle declaration establish that the CAO was giving business rather than legal advice with regard to the transactions referenced in those documents. As stated in *United States v. Chen*, "[c]alling the lawyer's advice 'legal' or 'business' advice does not help in reaching a conclusion; it is the conclusion." 99 F.3d at 1502. That the lawyers were "involved in business decision-making" is irrelevant. What matters is whether the lawyer was employed with or without "reference to his knowledge and discretion in the law" to give the advice. *Id.*

Here, the CAO were a part of the team implementing the Airport Master Plan precisely because of "their legal knowledge." *United States v. Chen*, 99 F.3d at 1502. On the record submitted here, the Special Master does not conclude that all the communications at issue were business, rather than legal in nature. Accordingly, Defendants' Motion to Compel will not be granted on this basis.

**III.     Whether Communications with Independent Contractors are Subject to the Attorney Client Privilege**

It is undisputed that Plaintiffs managed the construction contracts for the Airport Master Plan, including those it entered into with Tutor-Saliba, through the use of both Airport employees, known as project managers, and through third party consultants known as construction managers. SFOA was the construction manager for the International Terminal Project. *See* Cox Dec. at ¶ 7; Declaration of Tom Kardos in Opposition to Defendants' Motion to Compel Documents, dated 4/20/05, (herein "Kardos Dec."), at ¶ 3. Both Mr. Cox (Deputy City Attorney), and Mr. Kardos (the Airport's Deputy Director until 2003), attest that the airport did not have sufficient staff to do all of the work necessary to implement a $2.4 billion construction program and thus hired outside architects to design buildings and systems and outside construction managers to act as the Airport's representatives to various contractors who were awarded Master Plan contracts. Kardos Dec., ¶3; Cox Dec., ¶ 7.

Regarding communications between the non-employee construction managers and contractors, Mr. Cox attests that it was necessary to "both seek information [from] and communicate advice to the airport's project managers and, often through or with the project

managers, the construction managers who assisted the project managers in managing the construction." Cox Dec. at ¶ 8. He states that the construction managers were representatives of the Airport and the City and were hired to protect the City's interests. *Id.* Part of the construction managers' job was to review and evaluate proposed change orders and make recommendations to Airport staff about proposed change orders. Mr. Cox further states that "they were, in various respects, acting on behalf of the Airport, they (a) had information I needed in order to give legal advice to the Airport on the matters they were working on, and (b) had to be made aware of certain legal advice I gave to the Airport so that they could carry out their function on behalf of the Airport in a manner that was consistent with that advice." *Id.* at ¶ 8. Mr. Cox expressly states that he gave "express and repeated instructions that [the construction managers] were required to treat [his] communications with them as confidential ..." *Id.* He states that he always had an expectation of confidentiality when he communicated with SFOA or other Airport representatives. *Id.*

Similar to Mr. Cox, Deputy City Attorney Gretchen Nicholson attests that she and other deputy city attorneys and outside counsel regularly met with project and construction managers, consultants and architects "throughout the course of construction to provide legal advice and obtain information necessary to give that advice. ... I was one of the airport attorneys who would from time to time remind those present that the communications with the deputies and outside counsel to obtain legal advice were privileged, and that the participants were not authorized to disclose those communications to third parties. I understood the parties at these meetings to be representatives of the Airport who were authorized to participate in the meetings as representatives of San Francisco; I further understood the communications with these parties concerning legal advice to be privileged and confidential." Nicholson Dec., at ¶ 4.

CCSF also offers Mr. Kardos' declaration to support a finding that communications with the third party contractors were privileged. Mr. Kardos references a seminar conducted by the CAO and outside counsel for employee-Project Managers regarding the legal aspects of managing construction wherein the need for preservation of confidentiality of attorney-client communications was discussed – written or oral. Kardos Dec. ¶ 4. Mr. Kardos also states that he

"understood the conversations in which the Airport sought and obtained legal advice to be privileged and confidential." *Id.* at ¶5. He, like Mr. Cox and Ms. Nicholson states that "the attorneys would from time to time remind those present that the communications with the deputies and outside counsel to obtain legal advice were privileged, and that the participants were not authorized to disclose those communications to third parties." *Id.* He further states that he never disclosed any confidential communications and knows of no instances when Airport employees or any representatives retained by the Airport in connection with the Master Plan disclosed to third parties the contents of a privileged communications that the Airport intended to remain confidential. *Id.*

Defendants argue that notwithstanding these declarations, third party independent contractors are not the clients of the CAO and thus communications between the CAO and the third parties or shared with the third parties cannot be withheld based on the privilege.

Proposed Federal Rule of Evidence 503, which is also known as Supreme Court Standard 503, cited by both Plaintiffs and Defendants, provides a useful starting place here.[1] The most relevant aspect of Standard 503 is its statement of the general rule:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client, (1) between himself or his representative and his lawyer or his lawyer's representative, or (2) between his lawyer and his lawyer's representative, or (3) by him or his lawyer to a lawyer representing another in a matter of common interest, or (4) <u>between representatives of the client or between the client and a representative of the client</u>, or (5) between lawyers representing the client.

Supreme Court Standard 503(b), underline added. Courts have found that depending on the factual scenario, independent contractors can be "representatives of the client" within the meaning of Standard 503(b). *See McCaugherty v. Sifferman,* 132 F.R.D. 234, 238-39 (N.D. Cal. 1990)

---

[1] Although not enacted by Congress, "courts have relied upon it as an accurate definition of the federal common law of attorney-client privilege . . . . 'Consequently, despite the failure of Congress to enact a detailed article on privileges, Standard 503 should be referred to by the Courts.'" 2 J. Weinstein, Evidence P 503[02] at 503-17 (1975)." *U.S. v. Spector,* (8th Cir. 1986) 793 F.2d 932, 938, (citation omitted), cert. denied, 479 U.S. 1031; *see United States v. (Under Seal),* 748 F.2d 871, 874 n.5 (4th Cir. 1984) (Supreme Court Standard 503 "provides a comprehensive guide to the federal common law of attorney-client privilege"); see also 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence P 503[02], at 503-19 (1993) (restating quoted proposition).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL DOCUMENTS WITHHELD UNDER CLAIMS OF PRIVILEGE OR WORK PRODUCT PROTECTION RESPONSIVE TO DEFENDANT'S FIRST REQUEST TO PRODUCE

(finding an independent contractor could have privileged communications with client's counsel); *In re Bieter*, 16 F.3d 929, 935 (8th Cir. 1994) (citing *McCaugherty v. Sifferman* and stating "it is inappropriate to distinguish between those on the client's payroll and those who are instead, and for whatever reason, employed as independent contractors. Such a distinction is consistent with neither the Supreme Court's decision in *Upjohn* …").

In *McCaughery v. Sifferman*, 132 F.R.D. 234, 238-39 (N.D. Cal. 1990), the court examined whether communications between counsel for the receiver of a bank (FSLIC) and outside consultants hired to help with the sale of a bank subsidiary, were privileged. As here, the attorneys for the receiver did not purport to represent the outside consultants. Nonetheless, the court concluded that the consultants could be treated as the functional equivalents of employees of FSLIC, and thus the principles articulated by the Supreme Court in *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) extending the attorney-client privilege to employees was satisfied. 132 F.R.D. at 239. In its analysis the Court examined the role of the consultants and determined that is would be necessary for the FSLIC attorneys to communicate with the consultants helping with what was a highly regulated sale and that in turn the consultants would need to communicate with the FSLIC attorneys. *Id.* The court however, found that the declarations submitted in support of the privilege were insufficient to support a finding that all who were privy to the subject communications shared equally in the expectation of confidentiality, or that all the subject communications were indeed for the purpose of obtaining or transmitting legal, rather than business advice. *Id.* Finding the privilege logs at issue in the case insufficient for the court to make a determination of whether the privilege applied, the court ordered the party claiming the privilege to submit declarations from the author of the communications (or the person at whose direction the communication was made) showing that it was made primarily for the purpose of generating legal advice. *Id.* The court's order forced compliance with a Standing Order similar to the one here that required a party invoking the privilege to provide, not just the name of the author and all recipients and their relationship to each other, but also provide, for each document, information regarding "(4) whether the primary purpose of the document or

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL DOCUMENTS WITHHELD UNDER CLAIMS OF PRIVILEGE OR WORK PRODUCT PROTECTION RESPONSIVE TO DEFENDANT'S FIRST REQUEST TO PRODUCE

16

communication was to seek or provide legal advice or services;" ... and (7) whether the document or communication was transmitted in confidence." *Id.* at 238-240, 248.

Similar to the case in *McCaugherty,* the Special Master concludes from the declarations of Tom Kardos, Kris Cox and Gretchen Nicholson that the third party construction managers could be de facto employees of the City in their role in implementing the various Airport contracts and thus communications between the CAO and those contractors could be privileged. However, as in *McCaugherty,* the declarations provided here fail to establish that each and every communication with third party construction managers was privileged. Specifically, the privilege logs, combined with the City's declarations submitted in opposition to this motion, fail to establish that the *construction managers,* as opposed to project managers such as Mr. Kardos, had an expectation of confidentiality in their communications with the CAO and outside counsel or that each and every one of those communications was for the purpose of obtaining legal advice. There are no declarations from the construction managers (or other third party contractors) attesting to such facts. While Mr. Kardos may have participated in a seminar on handling the legal aspects of the Airport contracts, there is no evidence that the outside contractors did so, and Mr. Kardos cannot speak for them. While both Mr. Cox and Ms. Nicholson make general statements that they would announce in meetings with SFIA and SFOA that all communications were privileged, neither attorney states that they included such announcements at every meeting, much less with every correspondence. Nor can Mr. Cox or Ms. Nicholson claim that other attorneys for Plaintiffs made similar announcements at all meetings and for all correspondence where Mr. Cox or Ms. Nicholson were not present or involved.

Judge Chen's Standing Order requires that "[w]ith respect to each communication for which a claim of privilege or work product is made, the asserting party must at the time of its assertion identify: ... (b) steps taken to ensure the confidentiality of the communication, including affirmation that no unauthorized persons have received the communication;..." Standing Order, § 13, EX. C to Ofierski Dec. (underline added).

In accordance with Judge Chen's Standing Order, the law of the Ninth Circuit and the facts of this particular case, Plaintiffs must go through their privilege logs, identifying all

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL
DOCUMENTS WITHHELD UNDER CLAIMS OF PRIVILEGE OR WORK PRODUCT PROTECTION
RESPONSIVE TO DEFENDANT'S FIRST REQUEST TO PRODUCE

17

communications either to, from or carbon copied to a third party and provide "affirmation" in the form of a declaration from the author of the communication (or the party directing that the communication be made) that the communication was for the purpose of either rendering or receiving legal advice and that the party had an expectation of confidentiality with regard to the communication and that the document was not shared with outside person(s) creating a waiver of the privilege. Any documents for which Plaintiffs cannot establish these criteria shall be produced.

## IV. Whether Plaintiffs have Waived the Attorney Client Privilege under the "Fairness Doctrine"

The fairness doctrine prevents a party from using the attorney-client privilege as both a sword and a shield. *Chevron Corp. v. Pennzoil Co.* (9th Cir. 1992) 974 F.2d 1156, 1162. "Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived." *Id.* citing *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991); *see also United States v. Ortland* (9th Cir. 1997) 109 F.3d 539, 545 (Where a party raises a claim which *in fairness* requires disclosure of the protected communication, the privilege may be implicitly waived).

.       The Ninth Circuit uses a three-pronged test to determine whether an implied waiver has been effected. *United States v. Amlani* (9th Cir. 1999) 169 F.3d 1189, 1195. First, the court considers whether the party is asserting the "privilege as the result of some affirmative act, such as filing suit." *Id.*, citing *Home Indem. Co. v. Lane Powell Moss &Miller* (9th Cir. 1995) 43 F.3d 1322, 1326 and *Hearn v. Rhay*, (E.D. Wash. 1975) 68 F.R.D. 574, 581. Second, the court examines whether "through this affirmative act, the asserting party puts the privileged information at issue." *Id.* Finally, the court evaluates whether "allowing the privilege would deny the opposing party access to information vital to its defense." *Id.* "[P]rivileged communications do not become discoverable simply because they are related to issues raised in the litigation." *Amlani, supra*, 169 F.3d at 1195, citing *Southern Cal. Gas Co. v. Public Utilities Comm'n* (1990) 50 Cal.3d 31 (internal quotation omitted). "When the sought-after evidence is "only 'one of several forms of indirect evidence' about an issue," the privilege has not been waived." *Id., citing Hamilton v. Lumsden (In re Geothermal Resources Int'l, Inc.* (9th Cir. 1996) 93 F.3d 648, 653

(per curiam).  The privileged information must be "vital" to the opposing party's defense for the privilege to be waived.  A survey of the cases relied upon by the parties in their briefs wherein the court found an implied waiver of the privilege based on the "fairness doctrine" informs the result reached by the Special Master here.

In *United States v. Amlani* (9th Cir. 1999) 169 F.3d 1189, the defendant Amlani raised a claim of ineffective assistance of counsel.  Amlani claimed that he discharged his first attorney, David Katz, because the government disparaged Katz in front of Amlani causing him to lose confidence in Katz and fire him.  Amlani's so-called "disparagement claim" allegedly led him to hire less experienced trial counsel that he claimed ultimately caused him to get an unreasonably long sentence.  The Court found that Amlani's "disparagement claim" put the privileged communications related to the reasons for discharging Katz "at issue" thus satisfying the second prong of the three prong test for implied waiver under the fairness doctrine.  The Court also found that denying the government access to the privileged communications would deny it access to information vital to its defense of the IOC claim and thus the third prong was also satisfied. Regarding the third prong, the Ninth Circuit found that:

> the government has demonstrated a real need for the evidence, especially in deciding the question of whether the allegedly disparaging statements caused Amlani to seek new counsel. ... Here, Amlani's claim of disparagement requires disclosure of communications relating to the Katz substitution. Amlani has already asserted that the prosecutor's "disparaging remarks caused me to sever my attorney-client relationship with Mr. Katz. . . . Before those disparaging remarks, I had a high opinion of Mr. Katz, . . . and I intended to hire him for . . . trial." To defend against this contention, the government must have access to communications that describe events surrounding Katz's initial withdrawal from representing Amlani. Simply put, Amlani cannot assert that certain factors caused him to discharge his attorney and then invoke the attorney-client privilege to prevent the government from examining the situation further. We have made it clear that "'the privilege which protects attorney-client communications may not be used both as a sword and a shield.'"

*Amlani,* 169 F.3d at 1195, citing *United States v. Ortland,* 109 F.3d 539, 543 (9th Cir. 1997) and *Chevron, supra,* 974 F.2d at 1162).

In *Chevron Corp. v. Pennzoil Co.,* the defendant Pennzoil claimed that its tax position was reasonable because it was based on advice of counsel. The "reasonableness" of defendants'

conduct was at the heart of the case, and the defendant had thus put the tax advice it received directly at issue. The Court held that the defendant could not invoke the attorney-client privilege to deny the plaintiff access to the very information that the plaintiff must refute in order to demonstrate that the defendant violated the law.  974 F.2d at 1162-63.

In *United States v. Bilzerian*, relied on by the Ninth Circuit in *Chevron*, the defendant's intent was in issue because he thought his actions were legal, and had discussed allegedly fraudulent transactions that were the subject of the suit with his attorney. According to the Second Circuit this "would have put his knowledge of the law and the basis for his understanding of what the law required in issue. His conversations with counsel regarding the legality of his schemes would have been directly relevant in determining the extent of his knowledge and, as a result, his intent." 926 F.2d at 1292, cited in *Chevron Corp*, 974 F.2d at 1162-63.  Thus, the Second Circuit determined the attorney client privilege had been impliedly waived.  *Id.*

In *Hearn v. Rhay* (E.D. Wash. 1975) 68 F.R.D 574, relied on by Defendants here, an inmate challenged the legality of his confinement in a mental health unit of a prison.  In its response, the government defendant raised the affirmative defense of immunity, arguing that they acted in good faith.  In order to respond to this defense, plaintiff sought information concerning legal advice provided to defendants. Defendants asserted the attorney-client privilege and plaintiff moved for an order compelling production of documents and answers to deposition questions. The court held that all the elements of an implied waiver existed because defendants invoked the privilege in furtherance of an affirmative defense they asserted for their own benefit; through this affirmative act they placed the protected information at issue, and one result of asserting the privilege was to deprive plaintiff of information necessary to defend against defendants' affirmative defense. The court held that the privilege should not apply and granted plaintiff's motions to compel.  *Id.* at 580.  The Court felt "compelled to recognize a new and narrowly limited exception to the attorney client privilege, which applies to civil rights suits against state officials under 42 U.S.C. § 1983, wherein the defendant asserts the affirmative defense of good faith immunity." *Id.* at 580.

And finally in *Minebea v. Co. Ltd. v. Papst* (D.D.C. 2005) 355 F.Supp.2d 518, also relied upon by Defendants, the Court considered whether allegations in a fraud claim by plaintiff Minebea that it had justifiably relied on representations of defendant Papst and Papst's legal counsel concerning "legal matters" such as the scope of certain patents and Minebea's rights under certain licenses, put the otherwise privileged attorney-client communications "at issue". The Minebea court first found that the Plaintiffs must disclose all information reflecting "facts" and plaintiff's understanding of the patents and licensing rights regardless of the source of such facts of understanding. The Court next found that is was "easily foresee[able]" that plaintiffs would invoke the attorney client privilege to withhold what would, in essence, be their understanding of the patents and licensing rights in question by claiming that it was "legal advice" because the "understanding" came from a Minebea lawyer of the "fact" involved was a lawyer's opinion. *Id.* at 524. Finding the content of attorney-client communications "inextricably merged with the elements of plaintiff's case", the Court concluded that "Minebea ha[d] opened the door to exploration by Papst of what other persons, documents and information Minebea relied on other than Papst." *Id.* at 525. The Court was careful to limit the scope of the implied waiver to only those privileged communications necessary to defend against the justifiable reliance claim, stating: "it cannot be that the filing of a fraud claim in and of itself constitutes implied or at issue waiver; there are too many fraud cases litigated where no such waiver is suggested or found." *Id.* At 525.

Here, in their Third Amended Complaint, in their fraud and false claims causes of action, Plaintiffs have alleged that they justifiably relied on Defendants representations concerning the MBE/DBE program, the bids, alleged over-billing on numerous change orders, schedules and requests for payment. Defendants claim that "[i]n doing so, Plaintiffs implicitly suggest that they were unaware of even the most patent of details incident to these ordinary transactions routinely occurring during the construction of the Airport projects. As a result, Plaintiffs have placed their collective state of mind directly at issue including that of their lawyer[s] …" Defendants' Opening Brief at 25:23-25. Defendants claim that because the CAO was intimately involved in the bids and approval of change orders, Plaintiffs cannot simultaneously claim that Tutor-Saliba made

misrepresentations and "then hide the knowledge they obtained through the City Attorney's detailed involvement in reviewing Defendants' bids and change orders on the projects." *Id.* at 25-26.

The Special Master does not find that Plaintiffs' allegations of justifiable reliance necessitate a finding of implied waiver of the privilege. The Special Master sees no attempt by Plaintiffs to "hide the knowledge they obtained" related to the bids and change orders behind the privilege, as alleged by Defendants. Unlike in the *Chevron, Bilzerian* and *Amlani* cases, there is no attempt to use the privileged communications as both a "sword" and a "shield" here. Unlike in *Chevron, supra,* the Plaintiffs here do not assert that they relied on the advice of counsel to justify their actions, and then refuse to reveal what that advice is. Unlike in *United States v. Bilzerian,* Plaintiffs do not claim they thought their actions were legal based on conversations with counsel, and then refuse to disclose the content of those conversations. And unlike *Amlani,* this is not an ineffective assistance of counsel case where the communications between the attorney and client are often put directly at issue. Nor does the Special Master find this case similar to *Hearn.* Plaintiffs have not invoked the privilege in furtherance of their claims, nor have Defendants' established that privileged communications are "vital" to their defense of the fraud claims and not attainable elsewhere.

The Special Master also finds that the *Minebea* case does not compel a finding of implied waiver here. In *Minebea,* the reliance alleged related to representations by defendant and defendant's counsel about certain patents and licenses. The *Minebea* court could "easily foresee" the plaintiff invoking the privilege to shield discovery of their knowledge of the patents and licenses, (legal matters at issue in the case), in part because the attorney client communications were inextricably linked with the elements of the plaintiff's case. Here, there is nothing in the record to lead the Special Master to find it easily foreseeable that Plaintiffs will invoke the privilege to shield their knowledge of the change orders and bids. While Plaintiffs' attorneys may have been advising the City and the SFIA and its employees and representatives regarding the bids and change orders, as found above, the record does not support a finding that the attorneys were making all the business decisions for the Airport project or that the communications between the

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL        22
DOCUMENTS WITHHELD UNDER CLAIMS OF PRIVILEGE OR WORK PRODUCT PROTECTION
RESPONSIVE TO DEFENDANT'S FIRST REQUEST TO PRODUCE

City and the CAO concerned business rather than legal advice. What the plaintiffs knew about the bids and change orders at the time they were happening, while entirely relevant, does not necessitate a probe into all attorney client communications related to those bids and change orders. As in *Minebea,* there is nothing keeping Defendants from ascertaining through discovery what Plaintiffs knew about the change orders and bids, regardless of the source. But this does not mean that all communications containing legal advice related to the bids and change orders is discoverable.

Accordingly, Defendants request that production of documents be compelled based on the fairness doctrine is denied.

### V.   Whether the documents are Properly Withheld Under the Work Product Doctrine

Defendants argue that Plaintiffs documents withheld based on a claim of work product were not prepared "because of" litigation and thus are not protected from disclosure under the work product doctrine. Defendants also again argue that the documents are business documents since the CAO was acting as a business rather than legal representative and thus the subject documents would have been prepared regardless of the prospect of litigation. Defendants again point to the Kardos Memorandum as an example of a business rather than legal communication and also cite to documents that predate the Airport contracts arguing that these could not have been created in anticipation of litigation and therefore are not work product.

Alternatively, Defendants argue that even if the withheld documents constitute work product, they are nonetheless discoverable because Defendants can establish (1) substantial need for the materials, and (2) an inability, without undue hardship, to obtain the substantial equivalent of the materials by other means. *In re Resolution Trust Corp. v. Heiserman* (D.C. Col. 1993) 151 F.R.D. 367, 375.

In response, Plaintiffs argue that Defendants' failure to meet and confer on this issue, and their assertion of global waiver based on work product, rather than specifying particular documents to which the argument applies, doom their argument that the documents are not protected by work product. Plaintiffs also argue that assuming the documents are work product, Defendants' failure to assert whether the documents are opinion or non-opinion work product,

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL
DOCUMENTS WITHHELD UNDER CLAIMS OF PRIVILEGE OR WORK PRODUCT PROTECTION
RESPONSIVE TO DEFENDANT'S FIRST REQUEST TO PRODUCE

23

makes it impossible to know which standard to apply. Plaintiffs argue that even if the documents constitute non-opinion work product – requiring a lower threshold for production – Defendants have failed to establish any "substantial need" for the privileged documents at issue. And finally, Plaintiffs argue that the policy objectives behind work product protection are met here since the Defendants admit that they want these documents in order to avoid the work and effort expended by Plaintiffs in investigating their case and creating the subject documents.

The work product doctrine is codified in Federal Rule of Civil Procedure 26(b)(3). Pursuant to the doctrine, documents and tangible things prepared by or for a party, or the party's representative, in anticipation of litigation are protected from discovery. *See In re Grand Jury Subpoena* (9th Cir. 2004) 357 F.3d 900, 906; *In re Public Utilities Comm'n* (9th Cir. 1989) 892 F.2d 778, 780-781. A representative of a party includes the party's attorney, consultant, or agent. *See* Fed. R. Civ. P. 26(b)(3). If the party asserting work product satisfies its burden in showing that work product protection applies to the documents withheld, *see Chevron Texaco*, 241 F. Supp. 2d at 1080-81 (discussing burden of proof), the materials may still be ordered produced but only "upon an adverse party's demonstration of substantial need [for] the materials' and undue hardship [in obtaining] the substantial equivalent of the materials by other means.'" *In re Grand Jury Subpoena*, 357 F.3d at 906 (quoting Fed. R. Civ. P. 26(b)(3)). In ordering discovery of such materials when the required showing has been made, a court must "protect against the disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *Visa U.S.A., Inc. v. First Data Corp., supra,* 2004 WL 1878209, *5-6, citing Fed. R. Civ. P. 26(b)(3).

For a document or tangible thing to have been prepared in anticipation of litigation, litigation need not have actually commenced, but "there must be more than a remote possibility of litigation." *Fox v. California Sierra Fin. Servs.*, 120 F.R.D. 520, 524 (N.D. Cal. 1988). The Ninth Circuit has stated that "a document should be deemed prepared in anticipation of litigation' and thus eligible for work product protection . . . if in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained *because of* the prospect of litigation.'" *In re Grand Jury Subpoena*, 357 F.3d at 907

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL
DOCUMENTS WITHHELD UNDER CLAIMS OF PRIVILEGE OR WORK PRODUCT PROTECTION
RESPONSIVE TO DEFENDANT'S FIRST REQUEST TO PRODUCE

24

(emphasis added). The "because of" standard is not difficult to apply when a document has been prepared exclusively in anticipation of litigation. *See id.* at 907. However, when a court moves beyond such a "single purpose" document and considers a "dual purpose" document, a court must examine the nature of the document and the circumstances surrounding its creation before deciding if the work product doctrine properly shields its production.

In *In re Grand Jury Subpoena*, the Ninth Circuit examined the applicability of the work product doctrine to various "dual purpose" documents prepared by an environmental consultant hired by an attorney, who was in turn retained by Ponderosa to advise and defend it in anticipated litigation with the government. *See id.* at 905. Ultimately, the Ninth Circuit concluded that the documents at issue were entitled to work product protection because, "taking into account the facts surrounding their creation, their litigation purpose so permeated any non-litigation purpose that the two purposes [could not] be discretely separated from the factual nexus as a whole." *Id.* at 910.

Here, the Special Master finds that documents predating the airport contracts at issue in this case were not prepared "because of" litigation and thus are not properly withheld based on the work product doctrine and shall be produced unless otherwise protected by the attorney-client privilege.

Documents prepared on or after the date of the airport contracts at issue here, may have been prepared in anticipation or "because of" litigation. Plaintiffs are ordered to reexamine all documents in this category for which work product protection is claimed to determine whether they were indeed prepared "because of" potential litigation and not just a remote possibility of litigation. Any documents not prepared "because of" litigation shall be produced unless protected by the attorney-client privilege.

The Special Master also finds that on the record presented here, the Defendants have not established a "substantial need" for the documents at issue here sufficient to overcome work product protection. As pointed out by Plaintiffs, Defendants motion to compel is very broad, applicable to every claim of work product protection made by Plaintiffs, and fails to link particular claims to particular contracts or transactions or even document requests. As such, it is impossible

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL
DOCUMENTS WITHHELD UNDER CLAIMS OF PRIVILEGE OR WORK PRODUCT PROTECTION
RESPONSIVE TO DEFENDANT'S FIRST REQUEST TO PRODUCE

25

to determine whether there is indeed "substantial need" for the documents at issue, but instead the motion appears to be an attempt by Defendants to get wholesale production of the withheld documents.    This finding, however, is without prejudice to Defendants renewing their motion to compel to establish substantial need for specific documents postdating the airport contracts which Plaintiffs continue to withhold following the reexamination ordered herein.

## VI.    Whether Plaintiffs Waived the Attorney-Client Privilege that Might Have Protected Human Rights Commission Documents Produced in Response to the FBI's "Forthwith Subpoena"

Defendant argues that Plaintiffs have waived the attorney client privilege when the Human Rights Commission (HRC) and the CAO voluntarily turned over HRC documents responsive to a U.S. Attorney's Office "forthwith subpoena" without asserting an objection for documents reflecting attorney client communications or attorney work product.  Plaintiffs do not dispute that they have waived the attorney-client privilege as to this category of documents, but argue that Defendants are not entitled to these documents because they failed to meet and confer as required by Judge Chen's discovery order in this case.

A target of a federal investigation waives the attorney client and work product protection for documents by voluntarily sharing them with federal authorities. *McKesson HBOC, Inc. v. Superior Court* (2004) 115 Cal.App.4th 1229, 1238; *In re Grand Jury (Impounded)* (3rd Cir. 1998) 138 F.3d 978, 981-982.  A forthwith subpoena does not authorize the search and seizure of documents and the person subpoenaed served may refuse to comply with the subpoena or challenge its validity prior to compliance.  *In re Grand Jury Subpoenas* (9th Cir. 1973) 926 F.2d 847, 854.  If a party voluntarily produces documents without objection or refusal, the privilege is waived.  *U.S. v. de la Jara* (9th Cir. 1992) 973 F.2d 746, 749-750.  The attorney client privilege may also be waived by implication, even when the disclosure of the privileged material was 'inadvertent or involuntary.'" *Id.*  Courts "will deem the privilege to be waived if the privilege holder fails to pursue all reasonable means of preserving the confidentiality of the privileged matter." *Id.* at 749-750.

Here, Plaintiffs have failed to dispute Defendants' claim that they waived any privilege that might have attached to documents produced in response to the forthwith subpoena.  In accord

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL DOCUMENTS WITHHELD UNDER CLAIMS OF PRIVILEGE OR WORK PRODUCT PROTECTION RESPONSIVE TO DEFENDANT'S FIRST REQUEST TO PRODUCE

26

with the above cited case law, the documents produced to the FBI in response to the forthwith subpoena, to the extent they are responsive to Defendants' document request, shall be produced here. Moreover, an examination of the correspondence between the parties related to document production supports Defendants contention that they met and conferred over the HRC documents here. *See* Tabatabai Dec., EXS. 19-33. Therefore, the Special Master does not agree that an alleged failure to meet and confer over documents in this category bars production here.

## VII.   Defendants' Objections to the Cox, Nicholson, Poplawski and Kardos Declarations

### A.   Cox Declaration

Defendants object to paragraphs 3, 4, 6, 7, 8 and 9 of Mr. Cox's declaration. Regarding these objections, the Special Master finds as follows:

1. Paragraphs 3 and 4: OVERRULED. Mr. Cox is competent to testify regarding his job duties as a Deputy City Attorney and whether his job entailed giving business of legal advice.

2. Paragraph 6: SUSTAINED as to Mr. Cox's statements as they relate to what others at the City Attorney's office did or did not do in connection with advising the Airport. OVERRULED as to Mr. Cox's statements regarding his own actions and job duties as a Deputy City Attorney.

3. Paragraph 7: OVERRULED. Mr. Cox is competent to testify regarding what he knew about how the Airport Commission managed the construction contracts.

4. Paragraph 8: OVERRULED. Mr. Cox is competent to testify regarding his communications with the Airport's project and construction managers and whether he had an expectation of confidentiality regarding those communications. He is also competent to testify regarding what he knows about the function served by the construction managers.

5. Paragraph 9: SUSTAINED as to Mr. Cox's statements regarding whether it was necessary to communicate about certain legal matters to a large number of personnel to the extent that his statements relate to communications in which he was not

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL DOCUMENTS WITHHELD UNDER CLAIMS OF PRIVILEGE OR WORK PRODUCT PROTECTION RESPONSIVE TO DEFENDANT'S FIRST REQUEST TO PRODUCE

27

involved.  OVERRULED as to Mr. Cox's statements regarding his own communications with a large number of personnel.

### B. *Nicholson Declaration*

Defendants object to paragraphs 2, 4 and 5 of Ms. Nicholson's declaration.  Regarding these objections, the Special Master finds as follows:

1. Paragraph 2 and 4: OVERRULED.  Ms. Nicholson is competent to testify regarding her actions and job duties as a Deputy City Attorney and her understanding of the confidentiality of her communications.

2. Paragraph 5: SUSTAINED as to Ms. Nicholson's statements as they relate to what others at the City Attorney's office did or did not do in connection with advising the Airport.  OVERRULED as to Ms. Nicholson's statements regarding her own actions and job duties as a Deputy City Attorney.

### C. *Kardos Declaration*

Defendants object to paragraphs 2, 3, 4 and 5 of Mr. Kardos' declaration.  Regarding their objections, the Special Master finds as follows:

1. Paragraph 2: OVERRULED.  As the Deputy Airport Director, Mr. Kardos is competent to identify examples of Airport contracts between 1995 and 1997.

2. Paragraph 3: OVERRULED.  As the Deputy Airport Director, Mr. Kardos is competent to testify regarding his understanding of staffing needs of the Airport.

3. Paragraph 4: OVERRULED as to Mr. Kardos' own communications with the CAO and his understanding of whether those communications were privileged.  SUSTATINED to the extent that Mr. Kardos' testimony regards communications in which he was not involved and to the extent that it purports to represent whether the third party construction managers had an expectation of confidentiality.

4. Paragraph 5: OVERRULED as to Mr. Kardos' statements regarding his own experience and understanding of the purpose of certain meetings with the CAO and whether communications in those meetings were confidential and privileged.  Also

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL DOCUMENTS WITHHELD UNDER CLAIMS OF PRIVILEGE OR WORK PRODUCT PROTECTION RESPONSIVE TO DEFENDANT'S FIRST REQUEST TO PRODUCE

28

OVERULED as to Mr. Kardos' knowledge of whether others maintained the confidentiality of privileged documents.

D. Poplawski Declaration

Defendants object to paragraphs 2 and 3 of Ms. Poplawski's declaration. Regarding these objections, the Special Master finds as follows:

1. Paragraph 2: OVERRULED. Ms. Poplawski's list of documents sought through Defendants' Motion to Compel does not purport to be comprehensive.

2. Paragraph 3: OVERRULED. Ms. Poplawski is competent to testify regarding whether she has personally met and conferred with the Defendants regarding the documents she lists in her declaration.

**VIII. Order**

In accord with the above, it is hereby ordered as follows:

(1) Plaintiffs shall prepare amended privilege logs accompanied by additional declarations by the author of the communication (or the party directing that the communication be made) sufficient to establish that the communication was for the purpose of either rendering or receiving legal advice, that the party had an expectation of confidentiality with regard to the communication. The declarations shall include "the steps taken to ensure the confidentiality of the communication, including affirmation that no unauthorized persons have received the communication." Plaintiffs' amended logs shall include an entry for each and every document withheld. Any document for which the above criteria cannot be met shall be produced.

(2) Defendants' argument that the withheld documents should be produced because the CAO provided business rather than legal advice and thus no attorney-client relationship was formed is rejected and the Motion to Compel will not be granted on this basis.

(3) Defendants' argument that the withheld documents should be produced based on the "fairness doctrine" is rejected and the Motion to Compel will not be granted on this basis.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL
DOCUMENTS WITHHELD UNDER CLAIMS OF PRIVILEGE OR WORK PRODUCT PROTECTION
RESPONSIVE TO DEFENDANT'S FIRST REQUEST TO PRODUCE

29

(4) Plaintiffs shall produce all documents predating the airport contracts at issue in this case that were withheld based on the work product doctrine unless otherwise protected by the attorney-client privilege.

(5) Plaintiffs are ordered to examine all documents withheld based on the work product doctrine which postdate the airport contracts with Defendants at issue here to determine whether they were indeed prepared "because of" potential litigation. Documents not prepared "because of" litigation shall be produced unless otherwise protected by the attorney-client privilege.

(6) Plaintiffs shall produce all documents produced to the FBI in response to the forthwith subpoenas to the extent they are responsive to Defendants' document request.

IT IS SO ORDERED.

November 3, 2005

HON. DANIEL M. HANLON (Ret.)
Special Master

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL        30
DOCUMENTS WITHHELD UNDER CLAIMS OF PRIVILEGE OR WORK PRODUCT PROTECTION
RESPONSIVE TO DEFENDANT'S FIRST REQUEST TO PRODUCE