Hon. Daniel M. Hanlon (Ret.)
JAMS
Two Embarcadero Center
Suite 1100
San Francisco CA, 94111
Phone 415-982-5267
Fax 415-982-5287

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CITY AND COUNTY OF SAN FRANCISCO, a municipal corporation and a political subdivision of the State of California and DENNIS J. HERRERA, City Attorney for San Francisco, on behalf of the PEOPLE OF THE STATE OF CALIFORNIA,

Plaintiffs,

v.

TUTOR-SALIBA CORPORATION; a California corporation; TUTOR-SALIBA PERINI & BUCKLEY, J.V., a California joint venture; PERINI CORPORATION, a Massachusetts corporation; BUCKLEY & COMPANY INC., a Pennsylvania corporation; AMERICAN HOME INSURANCE COMPANY, a New York corporation; FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a Maryland corporation; SWISS REINSURANCE AMERICA CORPORATION, a New York corporation; THE AETNA CASUALTY AND SURETY COMPANY, a Connecticut corporation; and RONALD N. TUTOR,

Defendants.

**Case No. C 02 5286 CW (EMC)**
**Reference No. 1100042979**

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL PLAINTIFFS' COMPLIANCE WITH THE SPECIAL MASTER'S SEPTEMBER 8, 2005 DISCOVERY ORDER**

(Docket No. 757)

On October 24, 2005, Defendants Tutor-Saliba Corporation, et al. (herein collectively referred to as "Tutor-Saliba" or "Defendants"), filed their "Motion to Compel Plaintiffs' Compliance with the Special Master's Discovery Order" (herein "Defendants' Motion"). Plaintiffs City and County of San Francisco, et al., (herein "CCSF") filed their opposition on November 10, 2005, and a Reply brief was received on November 14, 2005. A hearing was held on November 15, 2005, the Honorable Daniel M. Hanlon (Ret.), Special Master, presiding.

After full consideration of all papers filed and arguments made, the Special Master hereby issues the following order:

## I. <u>Summary of Parties' Arguments</u>

Through its motion, Tutor-Saliba seeks an order compelling Plaintiffs to comply with the Special Master's Order, entered September 8, 2005, ("Special Master's Order"). This order required Plaintiffs to supplement their False Claims Chart ("FCC") within 30 days to (1) identify the person or persons who discovered the alleged falsity for each "claim" or statement identified in the Chart if known to Plaintiffs, and (2) to state the facts, with as much specificity as is available to Plaintiffs, supporting why each claim is false or misleading. Special Master's Order at 2:21-3:3. Defendants claim that they need this information to plan remaining discovery in the limited time available to them under the Court's Case Management Order, entered September 23, 2005.

In the first part of their Motion, Defendants argue that Plaintiffs' Revised False Claims Chart ("RFCC") fails to identify the person who discovered or determined the falsity of the representation as required by the Special Master's Order, instead stating in almost every case that "No such individual known" and further stating that the false claim was discovered or

determined by the San Francisco Attorney's Office "in the course of investigation in anticipation of litigation" and thus is protected from disclosure by the work product doctrine.

Defendants argue that work product does not protect against the disclosure of the identity of persons from whom facts are learned, arguing that the identity of lawyers is not work product or confidential attorney client information and thus Plaintiffs should be compelled to disclose the information now. Alternatively, Defendants argue that even if the identity of persons discovering the false claims is somehow privileged information, any privilege has been waived since in response to Defendants' argument that Plaintiffs' false claims are time barred, Plaintiffs argue that the false claims were not discovered until their attorneys' investigation revealed the right of action. Defendants assert that in their Third Amended Complaint, Plaintiffs complain about fraud occurring between 7 and 9 years ago, and thus necessarily are claiming delayed discovery of the alleged frauds.

Defendants also argue that the attorneys discovering the fraud are now key witnesses, and the facts and circumstances surrounding their discovery of the claims is discoverable. Defendants argue that they must be able to compare documents and witnesses available to the Plaintiffs in the earlier period with the documents and witnesses that Plaintiffs' lawyers claim to have reviewed in purportedly discovering the frauds that occurred years earlier.

In the second part of their Motion, Defendants claim that in their RFCC, Plaintiffs have failed to provide the facts supporting *why* each claim is false as required by the Special Master's Order. Defendants accuse Plaintiffs of "creat[ing] the illusion of such a disclosure by creating multiple laundry lists of generic 'reasons' why Defendants' pay applications are false, …" Defendants' Memorandum in Support of Motion, at 2:6-7. Defendants state that by being over-inclusive, Plaintiffs force Defendants to guess which stated reason is truly applicable for each

pay application. Defendants also state that the reasons given by Plaintiffs are too generic. As an example, Defendants cite to Plaintiffs' RFCC wherein Plaintiffs allege that Defendants failed to provide "timely and accurate … time impact schedules" but argue that Plaintiffs don't state what impact schedule is involved, and what was wrong with it (e.g., was it just untimely, or did it contain inaccurate information and if so what information was false). *See generally,* Defendant's Memorandum in Support of Motion, at 10-12 (citing other examples in RFCC). Defendants argue that unless Plaintiffs are required to be more specific "Defendants will learn why their scheduling reports contained false statements when Plaintiffs reveal it at trial." Defendant's Memorandum in Support of Motion, at 11:20-21.

Plaintiffs' response to Defendants motion begins with an outline of the evolution of their False Claims Chart and Revised False Claims Chart wherein they emphasize that they have provided an unprecedented amount of information – stating that the RFCC provides the equivalent of responses to thousands of interrogatories.

Regarding the identity of the person(s) who discovered the false claim, Plaintiffs argue that they have fully complied with the Special Master's Order. Plaintiffs state that in most cases there is no one at the Airport that discovered the false claim, and thus in accord with the Special Master's Order, they have not listed a person because none is known. Instead Plaintiffs state that the false claims were discovered by a team of investigating attorneys and consultants. Plaintiffs argue that the identity of this investigatory team is not discoverable because it is "highly unlikely" to lead to admissible evidence and thus is not relevant. Plaintiffs' Opposition at 5:14. Plaintiffs further argue that even if the identities of the discovering attorneys and consultants were relevant, that "marginal relevance" is outweighed by the substantial burden and expense to Plaintiffs of attempting to identify the name of the attorney or consultant -- stating that "forcing

Plaintiffs to list – for each of the more than 6,400 claims on the October 11, 2005 Chart – the name of the specific attorney, investigator or litigation consultant upon whose knowledge Plaintiffs have framed their allegations is not only burdensome, but as a practical matter, virtually impossible." Plaintiffs' Opposition at 6:14-17; 7:13-18.

Plaintiffs further argue that even if they could identify the names of the individuals on the team that discovered the alleged frauds and even if the names of those individuals were not protected, the substance of their individual knowledge is clearly work product. *Id.* at 5:15-16, 7:24-28. Plaintiffs state that "[d]iscovery of the identity of such individuals particularly in connection with individual false claims would reveal aspects of Plaintiffs' counsel's investigation, as well as counsel's evaluation of the case by identifying, among other things, the number of attorneys, investigators, and litigation consultants working on the litigation and on certain categories of claims, as well as the areas of expertise of the various attorneys, investigators, and litigation consultants disclosed." *Id.* at 8:9-14.

And finally in response to Defendants' arguments that Plaintiffs should reveal the names of attorneys that discovered the alleged frauds, Plaintiffs argue that they have not impliedly waived work product protection, citing the Special Master's Order issued November 3, 2005, wherein Defendants' argument that the "fairness" doctrine required the production of some otherwise privileged documents was rejected. Plaintiffs argue that if what the Defendants seek is substantive information to support a statute of limitations defense, they have every opportunity to go out and conduct their own discovery, including percipient and expert witness depositions, to try to prove that defense.

As to the whether the RFCC adequately describes why the claims are false, Plaintiffs argue that their RFCC is "in complete accord with the Special Master's directives" since it

identifies (1) Defendants' false representation and (2) what Defendants knew to be the fact. Plaintiffs' Opposition at 11:11-13. Plaintiffs cite examples in their RFCC wherein their description of "why false" is very specific and state that Defendants' complaints regarding Plaintiffs' "why false" disclosures are a "thinly-veiled attempt to obtain more one-sided disclosure, not genuine concerns regarding Plaintiffs' compliance with the discovery order." *Id.* at 11-12. Plaintiffs again state that if Defendants have unanswered questions about the substance of any of the false claims, they can ask those unanswered questions in depositions of percipient witnesses, or in interrogatories or requests for admission. *Id.* at 13:3-7. Plaintiffs argue that nothing in the Federal Rules or any of the Court's Orders requires that Plaintiffs' RFCC satisfy all of the Defendants' demands for answers. *Id.* at 13:8-10.

**Discussion**

**I. Whether Plaintiffs Should be Compelled to Identify the Names of Attorneys who Discovered the Alleged Frauds Listed in Their False Claims Chart**

The Special Master's Order states in relevant part as follows:

> the Plaintiffs shall identify the person who discovered or determined the falsity of the representation, if know[n] to them. If no person is known, Plaintiffs shall so state.

Special Master's Order at 2:25-3:2. In their RFCC, Plaintiffs, in almost all cases, do not identify the person who discovered the falsity of the representation, but instead state as follows: "The false claim was discovered or determined by the San Francisco City Attorney's office and/or consultants working at the direction of the San Francisco City Attorney's office in the course of

investigation in anticipation of litigation." *See* Plaintiffs' RFCC, dated 10/11/05, in the "Why False" column.

The identities of persons with knowledge of the facts and occurrences of the subject matter of the complaint are not protected under the work product doctrine. *Hoffman v. United Telecommunications Inc.* (D. Kan. 1987) 117 F.R.D. 440, 444, citing Wright, Miller & Marcus, *Federal Practice and Procedure*: *Civil* 2d § 2023 (Before and after the amendment to Rule 26, "the courts consistently held that the work-product concept furnished no shield against discovery, by interrogatories or by deposition, of the facts that the adverse party's lawyer has learned, or the persons from whom he or she had learned such facts, or the existence or nonexistence of documents, even though the documents themselves may not be subject to discovery."); *Hickman v. Taylor*, 329 U.S. 495, 504 (1947) (noting that there is a distinction between documents that a party has assembled and the facts that he has learned from those documents). *See also Bio-Rad Lab. v. Pharmacia, Inc.*, 130 F.R.D. 116, 121 (N.D. Cal. 1990) (citing Miller, Wright and Marcus); *Huffy Corp. v. Superior Court*, 112 Cal. App. 4th 97 (2003) (citing California cases); *Kane v. Her-Pet Refrigeration, Inc.*, 181 A.D.2d 257; 587 N.Y.S.2d 339 (1992 N.Y. App. Div.); *Sanders v. Ayrhart*, 404 P.2d 589 (1965); *Hruby v. Chicago Transit Authority*, 142 N.E.2d 81 (Ill. 1957); *Vythoulkas v. Vanderbilt University Hospital*, 693 S.W.2d 350 (Tenn. App. 1985); *In re Theragenics Corp. Secs. Litig.*, 205 F.R.D. 631 (N.D.Ga 2002).

The Special Master finds that under the above authority, the identity of the persons discovering alleged frauds here, even if those persons are attorneys, are not work product. Plaintiffs have the burden of showing that the attorneys' names are protected, and have failed to make that showing here. Although Plaintiffs argue that disclosure of attorneys' names will

compromise privileged work product, the Special Master does not agree. The names alone will not reveal strategy or attorney evaluations or impressions of the case and the unpublished cases cited by Plaintiffs in footnote 1 of their opposition brief do not change this result. In *MTI Technology Corp. Securities Litigation II,* 2002 U.S. Dist. LEXIS 13015 (C.D. Cal), the Court overturned the ruling of a magistrate judge finding that the identity of witnesses interviewed by opposing counsel is protected by work product. *Id.* at *7. In so holding, the court distinguished between "the identity and location of witnesses that may have knowledge of any discoverable matter" which were not protected, and "the identity of witnesses interviewed by opposing counsel" which were protected. *Id.* at *7-*8. The Court stated "[t]he rationale behind this distinction is that if the identity of interviewed witnesses is disclosed, opposing counsel can infer which witnesses counsel considers important, revealing mental impressions and trial strategy." *Id.* *In re Ashworth, Inc. Securities Litigation*, 2002 U.S. Dist. LEXIS 14971 (S.D. Cal), also cited by Plaintiffs, holds similarly that the identities of witnesses interviewed by opposing counsel are protected by the work product doctrine.

Furthermore, the Special Master does not agree that the burden on Plaintiffs of revealing the names of the person or persons discovering the alleged fraud outweighs the likelihood that the revelation will lead to admissible evidence. Plaintiffs argue that it is next to impossible to identify the attorney or attorneys that discovered each alleged fraud, yet state they had a team of attorneys and consultants investigating the alleged frauds. It seems clear from Plaintiffs' own brief, that they know who the team members are. Further, while Defendants may be "fixated" on the identity of the person or persons who discovered the fraud, as suggested by Judge Wilken, this does not mean that the identity of these person(s) is not likely to lead to admissible evidence. In their statute of limitation defense, Defendants must try to show that Plaintiffs knew or should

have known of their false claims before the statute of limitations ran. The facts known to Plaintiffs' at the time of alleged discovery of the fraud is also potentially relevant information in determining whether the statute of limitations bars some or all of Plaintiffs' claims. Moreover it is not at all clear that Defendants can get the information from an alternate source. While Plaintiffs argue that Defendants can "readily obtain the names" of the attorneys discovering the alleged frauds from Plaintiffs' extensive privilege logs in this litigation", these logs contain hundreds of names.

In accord with the above, Plaintiffs shall comply with the Special Master's prior order and identify the names of the person or persons who discovered the alleged falsities listed on Plaintiffs' RFCC if known to them, even if the person or persons discovering the alleged fraud are attorneys or consultants hired as part of the City's investigation.

Because the Special Master finds that the identity of the names of attorneys discovering the alleged falsities is not work product, he does not reach the issue of whether the Plaintiffs have waived work product protection.

## II. Whether Plaintiffs Have Provided Information Sufficient to Explain Why the Alleged Claims in Their Revised False Claims Chart are False

The Special Master's Order states in relevant part as follows:

The Plaintiffs must state with as much specificity as is available to them *why* the representation is false or misleading. The Special Master finds that the current False Claims Chart does not supply that element the Court has ordered, in most instances.[1] [FN

1: Plaintiffs have complied where they state TSPB's false representation and then state what TSPB knew to be the fact. That is not the case in every instance under the heading "why false."]

Special Master's Order at 2:21-25 (italics in original). In response to the Special Master's directive, the City has identified the document(s) the City alleges are false by name, date, bates stamp and contract and in the "why false" column "clearly identifies the statements Plaintiffs allege are false." Plaintiffs' Opposition at 12:13. Plaintiffs contend that by identifying the documents they allege are false, and stating that Defendants knew they were false, Plaintiffs have complied with the Special Master's Order and Defendants' Motion to Compel should be denied.

The intention of the prior order, however, was that they City "state with as much specificity as is available to them *why* the representation is false or misleading." Stating only that "Defendants knew it was false" is insufficient to answer *why* Plaintiffs believe the representation is false or misleading. While the Special Master acknowledges and recognizes the work that has gone into revising the initial False Claims Chart, and the further specificity that the RFCC contains, the Special Master does not find that Plaintiffs have complied with the September 8, 2005 Order. Thus, Plaintiffs must go through the RFCC and answer "why" the representation is false – with as much specificity as is available to them.

However this order shall be limited to those entries on the RFCC that list "Category A False Certification of [Sec.] 01025-1.07C3" as the justification in the "why false" column.[1] For

[1] In their RFCC, Plaintiffs list eight categories of explanation (Categories A-H) as to "why" any given representation is "false" or misleading. For each entry on their chart, Plaintiffs identify the "why false" category applicable to that entry. As an example, "Why False" Category A states in its entirety as follows:

each entry on the RFCC wherein Category A is given as the "why false" reason, Plaintiffs shall state not just that "Tutor knew the certification was false", but state *why* Plaintiffs believe that. Further, each entry in the RFCC shall be linked to the particular allegation(s) in Category A that apply to that entry. In other words, where the RFCC alleges that a particular payment application is false (for example, Entry 35 related to Revised Payment Application 7 for over $3.7 million), the "why false" column should indicate which of the allegations in Category A relate to that entry (for example, was it failure to submit a schedule, or was it that the schedule was false). Only then can the Court and the Defendants understand why Plaintiffs believe the particular allegations are false.

**Order**

---

> A. False certification of [Sec.] 01025-1.07C3 compliance
>
> Pursuant to the requirements of Section 01025-1.07C3, Tutor certified that this payment request was accurate and that it had fulfilled all scheduling requirements of Sections 01300 and 01310 of the contract, including updates and revisions. Tutor knew this certification was false because it knew that it had not submitted the schedules required by Sections 01300 and 01310, including compliant, accurate and timely (a) initial CPM schedule and original baseline schedule pursuant to 1.04 and 1.05; (b) monthly schedule updates pursuant to 1.06; (c) schedule revisions pursuant to 1.07; (d) recovery schedules pursuant to 1.08; (3) time impact schedules pursuant to 1.09; (f) time extension information pursuant to 1.10; (g) schedule reports, progress status reporting pursuant to 1.11 and 1.12; and (h) weekly look-ahead schedules based on and correlated by activity number to the submitted schedules pursuant to 1.13. Tutor further knew that the certification was false because the schedules that it did submit were false, manipulated and inaccurate, and failed to meet the substantive and procedural requirements set out in the contract, including Section 1.01 and 1.03. Tutor further knew that this certification was false because it knew that it sought as part of the application payment for material amounts it was not entitled to under the terms of the contract, including fraudulently inflated amounts for change order work and for purported change order work. Specifically, Tutor knew that it was falsely double billing and overbilling the Airport for purported changes, including falsely claiming payment for purported change order work that it had already been paid for as part of the base contract price, falsely claiming payment or purported change order work that it had already been paid for as part of the base contract price, falsely claiming payment for purported direct costs that it had already been paid for in its overhead markup, falsely claiming payment for concrete costs for Landavazo and Accu-crete that were inflated by kickback fees and double-billed sales tax and overhead amounts, and falsely claiming payment or purported acceleration and inefficiency costs that were either not incurred or already paid under previously issued change orders.

Plaintiffs' 10/11/05 [Revised] False Claims Chart Legend.

(1) Defendants' Motion to Compel Compliance with the Special Master's Order requiring that Plaintiffs "identify the person who discovered or determined the falsity of the representation, if know[n] to them" is hereby GRANTED. Plaintiffs shall identify on their October 11, 2005, Revised False Claims Chart the name or names of the attorney(s) or consultant(s) who discovered or determined the alleged falsity of the representation by **December 12, 2005.** Defendants shall then have 45 days from the date of disclosure to respond to Plaintiffs' augmented RFCC.

(2) Defendants' Motion to Compel Compliance with the Special Master's Order requiring that Plaintiffs "state with as much specificity as is available to them *why* the representation is false or misleading" is also GRANTED with respect to those entries on the RFCC that list "Category A False Certification of [Sec.] 01025-1.07C3" as the justification in the "why false" column and is DENIED as to all other entries on the RFCC.

IT IS SO ORDERED.

November 22, 2005

/s/ Daniel M. Hanlon
HON. DANIEL M. HANLON (Ret.)
Special Master