UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>TUTOR-SALIBA CORPORATION, *et al.*,<br><br>Defendants.<br>_____/ | No. C-02-5286 CW (EMC)<br><br>**ORDER OVERRULING TUTOR DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S ORDERS (Docket No. 787)** |

The Tutor Defendants have filed objections to two rulings of Justice Hanlon, the Special Master in this case. *See* Docket Nos. 784-85 (Special Master's rulings of 11/14/05). Having reviewed the parties' briefs and accompanying submissions, the Court hereby overrules the objections of the Tutor Defendants.

**I.   DISCUSSION**

The Tutor Defendants filed two motions to compel in which they argued that the City and a third party, SFO Associates ("SFOA"), were improperly withholding certain documents as protected by the attorney-client privilege and/or work product doctrine.[1] On November 14, 2005, Justice Hanlon granted in part and denied in part the motions. Subsequently, the Tutor Defendants filed objections to the rulings, which are now pending before the Court. The Court reviews the Special Master's rulings *de novo*.

---

[1] SFOA had been hired by the City to be the construction manager for the San Francisco International Airport ("SFIA") expansion program.

In essence, the Tutor Defendants make three arguments in their objections to Justice Hanlon's rulings. First, they argue that the documents at issue are not protected because the City Attorney's Office provided business, and not legal, advice to the City. Second, the Tutor Defendants argue that the documents at issue are not protected because the City's construction managers were independent contractors, and not de facto employees of the City. Finally, the Tutor Defendants contend that the Special Master should have found a waiver of any privilege based on the "fairness doctrine." Each of these arguments is discussed below.

A.  Business Advice v. Legal Advice

The Tutor Defendants assert that "Plaintiffs have produced absolutely no documents that were sent or received by, or even copied to, lawyers from the [City Attorney's Office] who worked on the Projects during their construction." Obj. at 6. According to the Tutor Defendants, communications involving the City Attorney's Office cannot be privileged when the Office did not provide legal advice to the City but rather provided business advice. The Tutor Defendants seek to declare all documents not privileged.

The Court finds that Justice Hanlon properly rejected the Tutor Defendants' argument. The declarations of Kris Cox and Gretchen Nicholson,[2] signed under penalty of perjury, constitute sufficient evidence that, as a general matter, the City Attorney's Office did provide legal advice to the City. *See* Docket No. 592 (Nicholson Decl.); Docket No. 593 (Cox Decl.). While it is possible that individual documents are not protected because they did not involve legal advice, the Tutor Defendants can challenge a claim of privilege for any such document based on the privilege log provided by the City, which Justice Hanlon has ordered be supplemented.

The Tutor Defendants contend that the City Attorney's Office must have provided business advice based on the Cox memorandum (*i.e.*, the memorandum, dated April 27, 1999, from Mr. Cox to an employee of the SFIA, Thomas L. Kardos). *See* Docket No. 383 (Blonstein Decl., Ex. 33)

---

[2] Mr. Cox is a former Deputy City Attorney and Ms. Nicholson a current Deputy City Attorney.

2

[hereinafter "Cox Memo"]. The Court does not agree with the Tutor Defendants that the Cox memorandum concerned business advice only as opposed to legal.[3]

First, the Kardos declaration indicates that the Cox memorandum was prepared because of the need for legal advice as opposed to business advice. *See Visa U.S.A., Inc. v. First Data Corp.*, No. C-02-1786 JSW (EMC), 2004 U.S. Dist. LEXIS 17117, at *33 (N.D. Cal. Aug. 23, 2004) (asking whether document was "created in the first instance for the purpose of rendering legal advice"); Docket No. 464 (Kardos Decl. ¶ 2) (stating that he asked Mr. Cox to provide him "with legal advice regarding a proposed Airport Commission agenda package relating to the 5500.E contract"). The Cox declaration also confirms such. *See* Docket No. 466 (Cox Decl. ¶ 3) (stating that Mr. Kardos requested "legal advice with respect to Airport Commission approval of the City and Tutor-Saliba's 'Global Settlement of Inefficiencies' related to Modification No. 12 of the Contract 5500.E International Terminal General Construction").

Second, the content of the Cox memorandum demonstrates that the primary purpose of the document was to provide legal advice. *See Visa*, 2004 U.S. Dist. LEXIS 17117, at *13 (N.D. Cal. Aug. 23, 2004) (noting that many courts have stated that the attorney-client privilege "applies only if the primary or predominate purpose of the attorney-client consultations is to seek legal advice or assistance") (internal quotation marks omitted). In the memorandum, Mr. Cox states that he is responding to Mr. Kardos's "request for comment." Cox Memo at 1. He also states: "My comments are intended to be constructive, urging you to make an *accurate and full disclosure* to the Airport Commission in support of this agenda item and seeking to broaden the *legal legitimacy* of the proposed Modification." *Id.* (emphasis added).

Mr. Cox goes on to say that, to the extent staff analysis "is based upon the SFOA Summary Evaluation dated March 29, 1999, there are several issues that I wish to bring to your attention." *Id.* at 2. For example, the SFOA Summary Evaluation does not provide any reasoning behind using certain inefficiency ratios: "Without such reasoned support, Staff and the Commissions may be

---

[3] In its order of June 13, 2005, the Court did not address whether the Cox memorandum was in fact privileged. Rather, it held that, even if the document were privileged, the City had waived the privileged because it failed to take reasonable measures or prompt action to preserve the privileged nature of the document. *See* Docket No. 672 (order of 6/13/05, at 5).

1  subject to criticism for compensating the contractor, without a reasoned, justified basis. *To help*
2  *avoid a future charge that the Airport is engaged in arbitrary exercise of discretion, the basis for*
3  *using these inefficiency ratios could be provided.*" *Id.* (emphasis added). As another example, Mr.
4  Cox notes that a certain "omission lends the impression that approving this settlement will result in
5  the avoiding [of] the identified costs. If other projects have the potential to create these same costs
6  despite approval of Modification 12, *full disclosure requires that the Commission be apprised of*
7  *them*." *Id.* at 3 (emphasis added).

      Elsewhere in the memorandum, Mr. Cox makes other comments such as follows:

(1) "[T]he release language terms that have been agreed to are not described in the Commission package. Additionally, the package does not indicate whether the contractor will be required to provide a resource-loaded, acceleration schedule detailing how acceleration will compress the critical path and achieve the completion date of December 31, 1999. *Describing any such measures would help in establishing the legitimacy of paying a premium to resolve a potential dispute with the contractor.*" *Id.* (emphasis added).

(2) "We have discussed a possible structure for this settlement of characterizing the settlement as $13.5 million payment for past impacts and $13.5 million payment for future impacts contingent upon completion by December 31, 1999, to provide sufficient cash flow for future acceleration. . . . These future impact payments might be characterized as an incentive to the contractor to achieve the December 31, 1999 date. *Our office continues to research the legal validity of offering such an incentive to the contractor under the terms of the existing contract and the provisions of local public works contracting law.*" *Id.* (emphasis added).

      The above statements reflect that the primary purpose of the Cox memorandum was to provide legal advice. The Tutor Defendants' argument that the memorandum contains primarily business advice is not convincing. According to the Tutor Defendants, Mr. Cox's comments could have been provided by a nonlawyer -- *i.e.*, no legal training was required to make the comments. But a nonlawyer would not be familiar with requirements of full disclosure, concerns regarding abuse of discretion, and so forth. Mr. Cox's comments do more than just provide, as the Tutor Defendants contend, an accounting or cost analysis perspective. *See also United States v. Chen*, 99

F.3d 1495, 1502 (9th Cir. 1996) ("What matters is whether the lawyer was employed with or without 'reference to his knowledge and discretion in the law,' to give the advice."). When a lawyer is hired to give advice, the presumption is that the hire is for legal advice. *Id.* Justice Hanlon properly stated and applied the appropriate legal standard.

B.   <u>Independent Contractors</u>

The Tutor Defendants argue next that communications between the City's construction managers (such as SFOA) and the City Attorney's Office cannot be privileged because the two did not have an attorney-client relationship. According to the Tutor Defendants, the construction managers were independent contractors only, and that all communications with the managers must be produced.

The Court does not find the Tutor Defendants' argument persuasive. Justice Hanlon properly found that communication with an outside consultant can be privileged. In *In re Bieter Co.*, 16 F.3d 929 (8th Cir. 1994), cited by Justice Hanlon, the Eighth Circuit considered whether the attorney-client privilege protects communications between counsel and a consultant of the client when the consultant is an independent contractor – *i.e.*, neither the client itself nor an employee of the client. *See id.* at 934. The court began by looking to proposed Federal Rule of Evidence 503 (also known as Supreme Court Standard 503), which, though never adopted, has been relied upon as an accurate definition of the federal common law of attorney-client privilege. *See id.* at 935. That proposed rule provides

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client, (1) between himself or his representative and his lawyer or his lawyer's representative, or (2) between his lawyer and the lawyer's representative, or (3) by him or his lawyer to a lawyer representing another in a matter of common interest, or (4) between representatives of the client or between the client and a representative of the client, or (5) between lawyers representing the client.

*Id.* at 935 (quoting proposed Fed. R. Evid. 503). Based on the proposed rule, the question framed by the Eighth Circuit was whether an independent contractor can ever be a representative of the client for purposes of applying the attorney-client privilege. *See id.* at 936.

5

The Eighth Circuit concluded that it can.  The court noted that, in *Upjohn Co. v. United States*, 449 U.S. 383 (1981), the Supreme Court disavowed the "control group" test to determine whether communications between counsel and an employee of the client would be protected by the attorney-client privilege.  This was because the control group test discouraged communication of relevant information by an employee to counsel seeking to render legal advice to the client.  *See id.* at 937.

> "The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer being fully informed by the client. . . . 'The lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out.'" Such information will, in the vast majority of cases, be available from the client or the client's employees, but there undoubtedly are situations . . . in which too narrow a definition of "representative of the client" will lead to attorneys not being able to confer confidentially with nonemployees who, due to their relationship to the client, possess the very sort of information that the privilege envisions flowing most freely.  "It is only natural that," just as "middle-level – and indeed lower-level – employees . . . would have the relevant information needed by corporate counsel if he is adequately to advise the client with respect to . . . actual or potential difficulties, so too would nonemployees who possess a "significant relationship to the [client] and the [client]'s involvement in the transaction that is the subject of legal services."

*Id.* at 937-38.  Other language used by the Eighth Circuit suggests that an independent contractor should be considered no different from an employee if the independent contractor is "'meaningfully associated with the [client] in a way that makes it appropriate to consider [the independent contractor an] "insider[]" for purposes of the privilege'" or if the independent contractor is the "'functional equivalent[]'" of an employee.  *Id.* at 936.

In *McCaugherty v. Siffermann*, 132 F.R.D. 234 (N.D. Cal. 1990), also cited by Justice Hanlon, Judge Brazil arrived at a holding similar to that of the Eighth Circuit in *Bieter* – in fact, the Eighth Circuit actually relied on *McCaugherty* in coming to its conclusion.  Judge Brazil concluded

that there was "no principled basis for distinguishing consultants from the kinds of employees to whom the Supreme Court extended the protection of the [attorney-client] privilege in *Upjohn*."[4] *Id.*

The Tutor Defendants contend, however, that a disclosure to a third party such as an independent contract must be *necessary* for the client to obtain informed legal advice in order to be protected. *See* Defs.' Resp. at 10-11. The Tutor Defendants argue that, while it may have been useful, convenient, or even efficient to keep the construction managers in the loop, it was not necessary in order for the City to obtain informed legal advice.

In support of this "necessary" argument, the Tutor Defendants cite several cases. One of the cases, *Ross v. UKI Ltd.*, No. 02 Civ. 9297 WHP JCF, 2003 WL 22319573 (S.D.N.Y Oct. 9, 2003), is not persuasive because it addresses New York law on privilege, not federal common law on privilege. *See id.* at *1 (stating that New York law dictates the outcome; noting that, under New York law, client must show that disclosure to third party was necessary to obtain informed legal advice). The Tutor Defendants, however, point out that, in *McCaugherty*, Judge Brazil also used language similar to that used in *Ross*. More specifically, in emphasizing that the attorney-client privilege protects only communications made primarily for the purpose of generating legal advice, Judge Brazil stated:

---

[4] For other cases along the lines of *Bieter* and *McCaugherty*, see *Twentieth Century Fox Film Corp. v. Marvel Enters.*, No. 01 Civ. 3016 (AGS) (HBP), 2002 U.S. Dist. LEXIS 22215, at *6 (S.D.N.Y. Nov. 15, 2002) (concluding that independent contractors were functional equivalent of employees); *In re Copper Market Antitrust Litig.*, 200 F.R.D. 213, 219 (S.D.N.Y. 2001) (stating that, under *Upjohn*, public relation firm's independent contractor status provided no basis for excluding its communications with client's counsel from protection of privilege); *Benedict v. Amaducci*, No. 92 Civ. 5239 (KMW), 1995 WL 23555, at *1 (S.D.N.Y. Jan. 20, 1995) (stating that consultations between independent contractor and clients' attorneys regarding litigation were privileged because independent contractor was acting as clients' representative during consultations; adding that disclosure to independent contractor of communications between clients and attorneys did not waive privilege if independent contractor was acting as clients' representative at time of disclosure); *Freeport-McMoran Sulphur, LLC v. Mike Mullen Energy Equipment Resource, Inc.*, No. 03-1496 c/w 03-1664 Section "A" (4), 2004 U.S. Dist. LEXIS 10048 (E.D. La. June 2, 2004) (concluding that independent contractor was *not* a representative of the client; mere fact that independent contractor was associated with client for years and assisted in development of project at issue – as opposed to being the "intimate link" with the development of the project – was not enough to demonstrate that he was a client representative); *see also In re Grand Jury Proceedings Under Seal*, 947 F.2d 1188, 1191 (4th Cir. 1991) (noting that, in *Kovel*, Second Circuit was not presented with situation of accountant acting as *client's* agent but rather as attorney's agent; adding that *Kovel* court recognized that communications by client's agent to attorney are privileged).

7

> No privilege can attach to any communication as to which a business purpose would have served as a sufficient cause, *i.e.*, any communication that would have been made because of a business purpose, even if there had been no perceived additional interest in securing legal advice. Similarly, privilege cannot attach to any communication that was compelled by a statute or regulation and whose confidentiality was not clearly preserved by the statutory or regulatory scheme. This follows because the privilege "applies only where necessary to achieve its purpose. Accordingly, it protects only those disclosures – necessary to obtain informed legal advice – which might not have been made absent the privilege."

*McCaugherty*, 132 F.R.D. at 238 (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1975)).

Similarly, the court in *Advanced Technology Associates, Inc. v. Herley Industries, Inc.*, No. 96-0132, 1996 WL 711018 (E.D. Penn. Dec. 5, 1996), relied on an appellate case that in turn relied on *Fisher* in stating that "[t]he reasons for the existence of the attorney-client privilege and for the loss thereof by disclosure to a third-party also circumscribe the exceptions to waiver by disclosure, which permit preservation of the privilege when confidential communications made to a third-party are 'necessary for the client to obtain informed legal advice.'" *Id.* at *5. The court later expanded on this point, stating:

> [E]xceptions to waiver of the attorney-client privilege must further the underlying purpose of assuring that a client is able to obtain informed legal assistance. That requirement is met when disclosure of otherwise privileged material to a third-party is essential to the privilege, *i.e.*, that absent disclosure of the communications to the third-party, the purpose of the attorney-client communication would not have been fulfilled because the client could not or would not have obtained legal assistance. Thus, in our view, the term "necessary" . . . indicates that the third-party disclosure must be of greater importance than merely facilitating communications between client and counsel which would have occurred in any event. Rather, for a third-party disclosure to be necessary to obtain legal advice, it must be virtually indispensable circumstance or condition related to obtaining such assistance or advice.

*Id.* at *8.

While the above cases have suggested that "necessity" must be shown to justify disclosure to an independent contractor, one legal treatise suggests that this standard is "too restrictive for the fair, efficient operation of the attorney-client privilege." 1 Paul R. Rice, Attorney-Client Privilege in the United States § 4:2, at 18 (1999). Indeed, according to this treatise:

> The standard of "necessity" imposes a requirement of confidentiality that serves no discernable purpose. It encumbers the privilege with difficult factual determinations that embroil courts in unnecessary disputes, and ultimately renders the privilege less effective because it injects uncertainty into its application.
>
> Agency should turn exclusively on the client's purpose in bringing the third-party into the confidential relationship with the attorney. *If the purpose was to assist in the obtaining of legal advice or assistance, regardless of its necessity, and the shared confidentiality has subsequently been maintained by both the client and third-party, the privilege should be applicable.*

*Id.* at 18-19. (emphasis added).

The Court adheres to the latter view. So long as the purpose of a particular communication was to assist in the obtaining or rendering legal advice or assistance, and shared confidentiality was expected and maintained, the privilege applies. *See generally Upjohn*, 449 U.S. at 391 (stating that "the privilege exists to protect . . . the giving of professional advice to those who can act on it"); *McCaugherty*, 132 F.R.D. at 239 (stating that, to be sure that consultants understood legal environment within which they were required to work and legal implications of any deals or terms they proposed, it would be necessary for lawyers to provide information and guidance to consultants).

The Tutor Defendants protest still that there could be no attorney-client relationship between the construction managers and the City Attorney's Office because, *e.g.*, SFOA and the City could have a conflict of interest. However, simply because the City could potentially sue SFOA does not rise to the level of "significant potential tensions between [the] interests of" the City and SFOA." *McCaugherty*, 132 F.R.D. at 240.

Of course, the above analysis does not mean that *all* communications between the construction managers and the City are necessarily privileged. Whether a communication is privilege or not will need to be determined on a case-by-case basis, and the Tutor Defendants can challenge before Justice Hanlon any claim of privilege to specific documents based on the amended privilege log and enhanced showing to be supplied by the City.

C. <u>Fairness Doctrine</u>

Finally, the Tutor Defendants argue that the Special Master should have held that any privilege over the documents at issue (*e.g.*, communications involving the City Attorney's Office) was waived pursuant to the fairness doctrine. *See Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975) (discussing an implied waiver based on fairness test). *See also United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999) (approving of *Hearn* test). Under the *Hearn* test, there are three factors to consider in determining whether there has been a waiver: (1) whether the party is asserting the privilege as the result of some affirmative act, such as filing suit; (2) whether, through this affirmative act, the asserting party puts the privileged information at issue; and (3) whether allowing the privilege would deny the opposing party access to information vital to its defense. *See id.* According to the Tutor Defendants, the City has placed the knowledge and state of mind of the City Attorney's Office at issue because the Office did not act as "traditional legal counsel" but rather as a manager of the airport construction project. Obj. at 12. The Tutor Defendants further argue: "Here, as the client's business agent, the [City Attorney's Office] is the best, if not the only representative of the 'client' that may establish Plaintiffs' state of mind when the City negotiated and approved the transactions at issue in this case . . . ." Obj. at 13.

The Court finds that Justice Hanlon properly rejected the Tutor Defendants' argument. First, it is based on the flawed conclusion that the City Attorney's Office acted in a business capacity. Justice Hanlon properly found that the City Attorney's Office did not make all the business decisions. To determine what Plaintiffs knew does not necessitate probing into all attorney-client communications. Second, as pointed out by Justice Hanlon, the documents at issue do not appear to be vital to the Tutor Defendants' defense because there are other sources from which the Tutor Defendants could get the information desired. *See* Docket No. 785 (Special Master's ruling of 11/14/05, at 23) ("[T]here is nothing keeping Defendants from ascertaining through discovery what Plaintiffs knew about the change orders and bids, regardless of the source. But this does not mean that all communications containing legal advice related to the bids and change orders is discoverable.").

The Tutor Defendants argue, however, that the fairness doctrine should apply to the instant case because, "unknown to the Special Master when he issued his Order (or to Defendants when they filed their Motion), Plaintiffs contend their claims, involving transactions entered seven to nine years ago are not time barred because they were 'discovered' by their counsel within the statutory time peirod." Obj. at 2; *see also id.* at 14-17.  The Court shall not consider this argument because, if the Tutor Defendants wish the Special Master to reconsider his ruling based on this new circumstance, then they should raise the argument before him in the first instance.  *Cf.* Docket No. 645 (order of 5/31/05, at 3) (agreeing with Tutor Defendants that City's motion for reconsideration should be considered in first instance by Justice Hanlon).

## II.  CONCLUSION

Justice Hanlon's rulings were comprehensive and well reasoned.  For the reasons stated above, this Court finds on *de novo* review that his findings and conclusions on the matters raised herein were correct.  The Court therefore overrules the Tutor Defendants' objections as presented herein.

This order disposes of Docket No. 787.

IT IS SO ORDERED.

Dated:  January 4, 2006

EDWARD M. CHEN
United States Magistrate Judge

11