1  Hon. Daniel M. Hanlon (Ret.)
2  JAMS
   Two Embarcadero Center
3  Suite 1100
   San Francisco CA, 94111
4  Phone 415-982-5267
   Fax 415-982-5287
5

6                    UNITED STATES DISTRICT COURT

7                    NORTHERN DISTRICT OF CALIFORNIA

8

9  CITY AND COUNTY OF SAN                  Case No.  C 02 5286 CW (EMC)
10 FRANCISCO, a municipal corporation and  JAMS Reference No. 1100042979
   a political subdivision of the State of
11 California and DENNIS J. HERRERA,       ORDER RE: PLAINTIFF'S
   City Attorney for San Francisco, on behalf  MOTION FOR PROTECTIVE
12 of the PEOPLE OF THE STATE OF           ORDER
13 CALIFORNIA,                               (Docket No. 765)

14                Plaintiffs,

15     v.

16 TUTOR-SALIBA CORPORATION; a
17 California corporation; TUTOR-SALIBA
   PERINI & BUCKLEY, J.V., a California
18 joint venture; PERINI CORPORATION, a
   Massachusetts corporation; BUCKLEY &
19 COMPANY INC., a Pennsylvania
   corporation; AMERICAN HOME
20 INSURANCE COMPANY, a New York
21 corporation; FIDELITY AND DEPOSIT
   COMPANY OF MARYLAND, a
22 Maryland corporation; SWISS
   REINSURANCE AMERICA
23 CORPORATION, a New York
24 corporation; THE AETNA CASUALTY
   AND SURETY COMPANY, a Connecticut
25 corporation; and RONALD N. TUTOR, an
26 individual

27                Defendants.

28

ORDER RE: PLAINTIFF'S MOTION FOR PROTECTIVE ORDER
1

On December 6, 2005, Plaintiffs City and County of San Francisco and Dennis J. Herrera's Motion for Protective Order came on before the Special Master on a noticed hearing. Kristine A. Poplawski, Esq., and Rafael Ofierski, Esq., agreed on behalf of Plaintiffs City and County of San Francisco and Dennis J. Herrera. David C. Romyn, Esq., and Robert Nida, Esq., appeared on behalf of Defendants Tutor-Saliba Corporation and Tutor defendants.

The matter was briefed, declarations filed, the matter argued and submitted.

The principal contention of the Plaintiffs is that when a Federal Grand Jury was investigating the conduct of certain City employees, in particular employees of the City's Human Rights Commission, the Office of the United States Attorney ("USAO") seized, pursuant to subpoena, certain documents the City did not waive the attorney-client privilege. The Tutor Defendants have issued a subpoena to the USAO and the USAO has indicated that it intends to produce the documents in response to said subpoena. Plaintiffs requested that they be allowed to review the documents in USAO's possession and to withhold privileged and confidential information. The City alleges that the documents include numerous privileged attorney-client communications, attorney work product and records containing third-party information protected from disclosure by state and federal law.

I. BACKGROUND

The Tutor Defendants served their subpoena on the USAO in March of 2004. The subpoena called for four classes of documents:

1) Documents relating to the investigation of alleged violations of law concerning the City's disadvantaged, minority or women-owned business programs;

2) Documents to the disadvantaged, minority or women-owned business that preformed work on City construction projects;

ORDER RE: PLAINTIFF'S MOTION FOR PROTECTIVE ORDER
2

3) Documents restating to USAO's investigation of individual employees of the City Human Rights Commission and;

4) Documents relating to USAO's investigation of employees of several companies that did business with the City. The original subpoenas were issued for documents produced in the USAO's investigation conducted in 1999. The initial subpoena was issued on June 25, 1999 and a "forthwith subpoena" issued on July 30, 1999. The "forthwith subpoena" directed the San Francisco Human Rights Commission (HRC) to turn over immediately the documents requested in the subpoena.

On the afternoon of July 30, 1999 an Assistant United States Attorney accompanied by FBI agents together with Deputy City Attorney Lisa Giorgi entered the HRC and presented the subpoena. A compliance check was requested and consented to by the City Attorney. [Curlurci Decl. ¶ 7-8]. The search and review of the documents continued on August 2 and August 3, 1999. The evidence shows that during the review, any documents which indicated privileged communications were immediately reviewed by the Deputy City Attorney who was present through out the search. No claim of privilege was made by the City during the search and review. [Merrill decl.]

In September of 1999, a claims investigator for the City Attorney's office personally reviewed the boxes originally signed and returned by the FBI. The investigator scanned all the documents into a control base and created an index of the documents. [Rader declaration.]

On March 8, 2004, the Tutor defendants served a subpoena on the United States Attorney's Office for the documents. No objection was made by the City at that time or within fourteen (14) days. (See FRCP 45 (c)(2)(B). A Motion for Protective Order or a Motion to

Quash was not filed at that time. This Motion for Protective Order was not filed until October 28, 2005.

On November 17, 2005, the Special Master filed his order Granting in Part and Denying in Part the Tutor Defendants' Motion to Compel Production of Documents withheld under Claims of Privilege or Work Product. The Special Master ruled that the City "…shall produce all documents produced to the FBI in response to the forthwith subpoenas to the extent they are responsive to Defendants' document request." (Docket 785.) At that time, there was no assertion of the attorney-client privilege in the City's opposition.

## II.   DISCUSSION

A.   Attorney-Client Privilege

The Special Master finds from the evidence submitted on the Motion, that Plaintiffs waived their attorney-client privilege. There were opportunities to assert the privilege for the record, regardless of the futility at the time.

The Plaintiffs contend that the City Attorney's office and the USAO were united in purpose. It is a fact that both offices desired to investigate and remedy any illegality in the administration of the City's contracts. But the Plaintiffs and the City Attorney's office were potentially adverse parties of the Federal investigation. It is the duty of the City Attorney's Office to represent the City agencies and their agents. This representation would extend to Federal Government investigations of wrongdoing by the City through its agencies.

B.   Work-Product Privilege

The Plaintiffs contend that even if their attorney-client privilege was waived, they did not waive the work product protection. For this they rely on *In re: McKesson HBOC, Inc. Securities Litigation*, 2005 U.S. Dist. (N.D. Cal 2005). Herrera, a review of *McKesson* reveals that work

product privilege in that case was protected by a written confidentiality between the government and McKesson that placed restrictions on the ability of the government to reveal the ifnromation to other protection adversaries. The courts have noted that generally a party can preserve work product protection by not disclosing the information to the government or by insisting on a promise of confidentiality before disclosure. (*Westinghouse Elec. Corp* v. Republic of Philippines, 951 F. 2d 1414.) The Special Master finds that there is no evidence of an agreement of confidentiality, in any form, between the USAO and the Plaintiffs regarding the confidentiality of the documents subject to the subpoena and forthwith subpoena.

C.   Third Party Privacy

The Plaintiffs contend that production of the documents will lead to this revelation of documents of third parties and violate said third parties privacy.

The Special Master finds that the protective order that is in effect in the current litigation will protect the confidentiality and rights of third parties. (e.g. the personnel records of City employees.)

### III.   ORDER

The Special Master, having considered the evidence, pleadings and argument presented by the parties, hereby orders that Plaintiffs' Motion for a Protective Order is hereby denied.

IT IS SO ORDERED.

January 6, 2005

HON. DANIEL M. HANLON (Ret.)
Special Master

ORDER RE: PLAINTIFF'S MOTION FOR PROTECTIVE ORDER
5