Hon. Daniel M. Hanlon (Ret.)
JAMS
Two Embarcadero Center
Suite 1100
San Francisco CA, 94111
Phone 415-982-5267
Fax 415-982-5287

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, a municipal corporation and a political subdivision of the State of California and DENNIS J. HERRERA, City Attorney for San Francisco, on behalf of the PEOPLE OF THE STATE OF CALIFORNIA,<br><br>      Plaintiffs,<br><br> v.<br><br>TUTOR-SALIBA CORPORATION; a California corporation; TUTOR-SALIBA PERINI & BUCKLEY, J.V., a California joint venture; PERINI CORPORATION, a Massachusetts corporation; BUCKLEY & COMPANY INC., a Pennsylvania corporation; AMERICAN HOME INSURANCE COMPANY, a New York corporation; FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a Maryland corporation; SWISS REINSURANCE AMERICA CORPORATION, a New York corporation; THE AETNA CASUALTY AND SURETY COMPANY, a Connecticut corporation; and RONALD N. TUTOR,<br><br>      Defendants.<br>_____/ | CW<br>Case No. C 02 5286 (EMC)<br>JAMS Reference No. 1100042979<br><br>**ORDER DENYING TUTOR SALIBA'S MOTION TO COMPEL PLAINTIFFS' COMPLIANCE WITH LOCAL RULE 37-1 AND FOR THE SETTING OF THE DEPOSITIONS OF THERESE STEWART, AVE TUCKER, TOM CARUSO, DAVID NORMAN, JOANNE HOEPER FOR DATES IN JANUARY 2006**<br><br>(Docket No. 837) |

Defendants Tutor-Saliba Corporation, et al. (herein collectively referred to as "Tutor-Saliba" or "Defendants") Motion to Compel Plaintiffs' Compliance with Local Rule 37-1 and for the Setting of the Depositions of Therese Stewart, Ave Tucker, Tom Caruso, David Norman, Joanne Hoeper for Dates in January 2006 was heard on shortened time on January 18, 2006, the Honorable Daniel M. Hanlon (Ret.), Special Master, presiding. Plaintiffs City and County of San Francisco, et al., (herein "City" or "Plaintiffs") filed an opposition to the motion and appeared at the hearing.

At the hearing, the Special Master granted the parties' requests to file post hearing letter briefs. Tutor Saliba's post hearing letter brief was submitted on January 25, 2006 and the City's was submitted on January 27, 2006.

After full consideration of all papers filed and arguments made, the Special Master hereby issues the following order.

### I.  Overview of Defendants' Motion

Through the instant motion, Tutor Saliba seeks an order compelling Plaintiffs to produce the following lawyers and consultants for deposition: Therese Stewart, David Norman, Joanne Hoeper, Tom Caruso and Ave Tucker. Defendants claim that because Plaintiffs have identified these individuals as the persons who discovered the alleged fraud asserted by Plaintiffs in this case after the statute of limitations had run, these lawyers and consultants are witnesses to key facts related to Defendants' statute of limitations defense.

Plaintiffs claim that the circumstances and communications related to the attorneys' and consultants' investigation of the fraud is protected by the attorney client privilege and work product doctrine. Defendants claim that Plaintiffs have impliedly waived the attorney client privilege and work product doctrine as it relates to the discovery of the alleged fraud. In support of their motion, Defendants cite to *In re Imperial Corp of America* 179 F.R.D. 286, 290 (S.D. Cal. 1998), *Titan Corporation v. M/A –Com, Inc.,* 1994 WL 16001739 (S.D. 1999) and *American Standard Inc. v. Bendix Corp.,* 80 F.R.D. 706, 708 (W.D. Mo. 1978).

Defendants seek an order compelling Plaintiffs to make the named individuals available for deposition and compelling them to answer questions related to their investigation and

ORDER DENYING TUTOR SALIBA'S MOTION TO COMPEL PLAINTIFFS' COMPLIANCE WITH LOCAL RULE 37-1 AND FOR THE SETTING OF THE DEPOSITIONS OF THERESE STEWART, AVE TUCKER, TOM CARUSO, DAVID NORMAN, JOANNE HOEPER FOR DATES IN JANUARY 2006

1

discovery of the alleged frauds. Defendants asked that the depositions take place by the end of January 2006.

**Discussion**

The Supreme Court has referred to the attorney-client privilege as the "oldest of the confidential communications known to the common law" whose purpose is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn v. United States*, 449 U.S. 383, 389 (1981). Any waiver of the attorney-client privilege must be narrowly construed and be "no broader than needed to ensure the fairness of the proceedings before it." *In re Lott*, 424 F.3d 446, 453 (6th Cir. 2005). *See also Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003) (courts "must impose a waiver no broader than needed to ensure the fairness of the proceedings before it"). "A broad waiver rule would no doubt inhibit the kind of frank attorney-client communications and vigorous investigation of all possible defenses that the attorney-client and work product privileges are designed to promote." *Id.* at 722.

Also vital to the adversarial process is the work product doctrine, codified in Fed. R.Civ.P. 26(b)(3), which protects the lawyer's "written statements, private memoranda and personal recollections prepared by ... counsel in the course of his [or her] legal duties." *Hickman v. Taylor,* 329 U.S. 495, 510 (1947). Work product of opposing counsel can only be obtained on a showing of substantial need and undue hardship. Fed.R.Civ.P. 26(b)(3).

Relying on *In re Imperial Corp of America* 179 F.R.D. 286, 290 (S.D. Cal. 1998), *Titan Corporation v. M/A –Com, Inc.,* 1994 WL 16001739 (S.D. 1999) and *American Standard Inc. v. Bendix Corp.,* 80 F.R.D. 706, 708 (W.D. Mo. 1978), Defendants argue that Plaintiffs have impliedly waived the attorney-client privilege and work product protection that might apply to the circumstances and investigation of the alleged fraud by three city attorneys and two consultants working with those attorneys.

//
//

The Ninth Circuit uses a three-pronged test to determine whether a party asserting the privilege has impliedly waived the attorney client privilege or work product protections. *United States v. Amlani,* 169 F.3d 1189, 1195 (9th Cir. 1999).[1] First, the court considers whether the party is asserting the "privilege as the result of some affirmative act, such as filing suit." *Id.,* citing *Home Indem. Co. v. Lane Powell Moss &Miller,* 43 F.3d 1322, 1326 (9th Cir. 1995), and *Hearn v. Rhay,* 68 F.R.D. 574, 581 (E.D. Wash. 1975). Second, the court examines whether "through this affirmative act, the asserting party puts the privileged information at issue." *Id.* Finally, the court evaluates whether "allowing the privilege would deny the opposing party access to information vital to its defense." *Id.*

> [P]rivileged communications do not become discoverable simply because they are related to issues raised in the litigation. *Southern Cal. Gas Co. v. Public Utilities Comm'n* 50 Cal.3d 31 [] (Cal. 1990). When the sought-after evidence is only one of several forms of indirect evidence about an issue, the privilege has not been waived. *Hamilton v. Lumsden (In re Geothermal Resources Int'l, Inc.* (9th Cir. 1996) 93 F.3d 648, 653 (per curiam).

*Amlani,* 169 F.3d at 1195 (internal quotations and some citations omitted).

### 1. Whether Plaintiffs are Asserting the Privilege as the Result of Some Affirmative Act such as Filing Suit

The first prong of the *Amlani* test is satisfied here. Plaintiffs are asserting the privilege as the result of the affirmative act of filing suit. Plaintiffs cite to two district court cases from New York, *Chase Manhattan Bank v. Drysdale Sec. Corp.,* 587 F.Supp. 57 (S.D.N.Y. 1984) and *Resolution Trust Corp. v. Mass. Mutual Life Ins. Co.,* 200 F.R.D. 183 (W.D.N.Y. 2001), arguing that the assertion of the privilege in response to an affirmative defense is not the result of an affirmative act satisfying the first prong on *Amlani.*

In *Chase Manhattan Bank,* the court declined to find an implied waiver primarily because the third prong of the *Amlani* test was not satisfied: the privileged communications were not essential to the defense asserted. The Court noted, "[t]he need for disclosure is not nearly as compelling here as in the cases cited as precedent for implied waiver." 587 F.Supp. at 58-59. While the court also found that the plaintiff's response to an affirmative defense could not lead to

---

[1] This test is derived from the district court opinion of *Hearn v. Rhay,* 68 F.R.D. 574, (E.D. Wash. 1975) but will herein be referred to as the *Amlani* test.

ORDER DENYING TUTOR SALIBA'S MOTION TO COMPEL PLAINTIFFS' COMPLIANCE WITH LOCAL RULE 37-1 AND FOR THE SETTING OF THE DEPOSITIONS OF THERESE STEWART, AVE TUCKER, TOM CARUSO, DAVID NORMAN, JOANNE HOEPER FOR DATES IN JANUARY 2006

3

a finding of implied waiver, it did so by conflating the first and second prongs of *Amlani,* finding a response to an affirmative defense does not put the privileged communications of the plaintiff "at issue." *Id.*

In the *Resolution Trust Corp.* case, the court found that the first prong of the *Amlani* test was satisfied, but instead analyzed whether the second "at issue" prong could be satisfied when the privilege was asserted in response to an affirmative defense. 200 F.R.D. at 192.

The first prong of Ninth Circuit test articulated in *Amlani* is clear on its face and requires simply that the Plaintiffs assertion of the privilege results from the act of filing suit. Although assertion of the privilege in response to an affirmative defense may be more attenuated than a direct assertion of the privilege in support of a party's own claim, nonetheless, the first prong of the *Amlani* test is satisfied here. The cases cited by Plaintiffs do not change this result.

## 2. Whether Through this Affirmative Act, the Asserting Party Puts the Privileged Information "At Issue"

The second prong of *Amlani* asks whether the party asserting the privilege has "put[] the privileged information at issue." 169 F.3d at 1195. Putting the privileged information "at issue" means relying on that information at trial. *See In re Lott,* 424 F.3d 446, 454 (6th Cir. 2005) (reversing a district court decision finding implied waiver because the party asserting the privilege had "put neither the performance of his attorney nor the content of their confidential communications before the court"); *Rhone-Poulenc Rorer Inc. v. Home Indemn. Co.,* 32 F.3d 851, 863 (3d Cir. 1994) (attorney client communications are put in issue "where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication"). *See also Developments in the Law-Privileged Communications, Implied Waiver,* 98 Harv. L. Rev. 1629, 1638 (1985) (surveying case law and finding that implied waiver happens when "the pleading places at issue the subject matter of a privileged communication in such a way that the party holding the privilege will be forced to draw upon the privileged material at trial in order to prevail.").

As explained by one scholar,

> placing-at-issue waiver can be justified as an application of the "anticipatory waiver" principle: an allegation, like a pretrial disclosure, merely anticipates a waiver that will

ORDER DENYING TUTOR SALIBA'S MOTION TO COMPEL PLAINTIFFS' COMPLIANCE WITH LOCAL RULE 37-1 AND FOR THE SETTING OF THE DEPOSITIONS OF THERESE STEWART, AVE TUCKER, TOM CARUSO, DAVID NORMAN, JOANNE HOEPER FOR DATES IN JANUARY 2006

4

occur at trial. When the party asserting the privilege bears the burden of proof on an issue and can meet that burden only by introducing evidence of a privileged nature, waiver is clearly warranted at the discovery stage. Even though his adversary could, in any event, successfully raise a claim of waiver once the privileged matter is partially introduced at trial, [footnote omitted] waiting until trial might reduce the chances of settlement or prejudice his adversary's ability to prepare effectively for trial. But when the burden of proof does not lie with the party asserting the privilege, waiver is warranted only once a party indicates an intention of relying upon privileged evidence during trial. [Footnote omitted.] This analysis provides a simple rule of thumb for determining whether an allegation creates unfairness that calls for waiver: when evidence bears on a claim or defense, its privilege is waived unless the holder agrees not to introduce it at trial.

98 Harv. L. Rev. 1629, 1639 (1985) (citations omitted).

Here, Plaintiffs state that in response to Tutor Saliba's statute of limitations defense, they will call Airport officials who will testify to the fact that they were unaware of the Tutor Defendants' fraud until less than three years before the City filed suit. Plaintiffs' Opposition to Tutor Defendants Motion to Compel Depositions of Plaintiffs' Attorneys at 11:26-28 (herein "Plaintiffs' Opp."). The City asserts that in this case, it "can and will 'prove the reasonableness' of its failure earlier to discover the Tutor Defendants' fraud 'without relying on privileged communications.'" *Id.* at 12:28-13:2. At this point, the Special Master is not convinced that the City has put the privileged communications and work product "at issue" such as to justify the depositions sought through this motion.

The cases relied upon by Defendant do not convince the Special Master otherwise. In *Titan Corp. v. M/A-Com Inc.* 1994 WL 16001739 (S.D. Cal.), the court found an implied waiver of the attorney client privilege in part because the Plaintiff "affirmatively relie[d] on its counsel's investigation and assessment to support its claim that it did not and could not with reasonable diligence have discovered the alleged fraud prior to one year before it filed its complaint." *Titan Corp.*, 1994 WL 16001739 at *2.[2] Here, while Plaintiffs do state that their counsel and a team of consultants discovered the fraud, they claim they will not "affirmatively rely" on counsel's

---

[2] The *Titan* Court does not discuss whether the plaintiff needed to call his counsel as a witness to prove his diligence, or whether plaintiff planned to call witnesses to describe counsel's efforts and thus is not as helpful as it might be.

ORDER DENYING TUTOR SALIBA'S MOTION TO COMPEL PLAINTIFFS' COMPLIANCE WITH        5
LOCAL RULE 37-1 AND FOR THE SETTING OF THE DEPOSITIONS OF THERESE STEWART, AVE
TUCKER, TOM CARUSO, DAVID NORMAN, JOANNE HOEPER FOR DATES IN JANUARY 2006

investigation at trial, but instead will prove the reasonableness of their failure to discover the fraud earlier through other witnesses, thus distinguishing this case from *Titan*.

In *Imperial Corp. of America,* 179 F.R.D. 286 (S.D. Cal. 1998), also cited by Tutor Saliba, the Defendant wanted to know what facts the plaintiff's former attorneys possessed in a prior investigation, one that occurred prior to the running of the statute of limitations. 179 F.R.D. at 288. The defendant believed that the plaintiff's prior attorney possessed facts that put it on notice of the alleged fraud before the statute had run and sought the so-called "Pillsbury documents". *Id.* The court found that the plaintiff had placed at issue what was known to the plaintiff and his attorneys prior to the time the statute of limitations had expired. *Id.* at 289. Thus the court found that defendants had a right to discovery of the "Pillsbury documents. *Id.* at 290. The "Pillsbury documents" were documents bearing on what the Plaintiffs knew prior to the expiration of the statute of limitations. *Id.* at 288-290. There is no discussion in the case related to whether the Plaintiffs had waived the attorney-client privilege with respect to communications made after the expiration of the statute of limitations.

Here, Plaintiffs claim that they have produced all documents in the Airport's possession bearing on facts known to the Airport prior to the expiration of the statute of limitations, thus distinguishing this case from *Imperial Corp.* *See* Declaration of David Norman in Opposition to Tutor Defendants' Motion to Compel Depositions of Plaintiffs' Attorneys, ¶ 3; Declaration of Joanne Hoeper in Opposition to Tutor Defendants' Motion to Compel Depositions of Plaintiffs' Attorneys, ¶ 3; Declaration of Therese M. Stewart in Opposition to Tutor Defendants' Motion to Compel Depositions of Plaintiffs' Attorneys, ¶¶ 4, 5. And as stated above, the City asserts that it "can and will 'prove the reasonableness' of its failure earlier to discover the Tutor Defendants' fraud 'without relying on privileged communications.'" Plaintiffs' Opposition to Tutor Defendants Motion to Compel Depositions of Plaintiffs' Attorneys at 12:28-13:2. Moreover the attorneys all aver that they have no first hand knowledge of the facts known to the Airport or City officials before 1999. *See* Declaration of David Norman, ¶ 3; Declaration of Joanne Hoeper, ¶ 3; Declaration of Therese M. Stewart, ¶¶ 4, 5.

//

ORDER DENYING TUTOR SALIBA'S MOTION TO COMPEL PLAINTIFFS' COMPLIANCE WITH LOCAL RULE 37-1 AND FOR THE SETTING OF THE DEPOSITIONS OF THERESE STEWART, AVE TUCKER, TOM CARUSO, DAVID NORMAN, JOANNE HOEPER FOR DATES IN JANUARY 2006

6

//

The Special Master does not find that the *Titan* and *Imperial Corp. of America*³ cases compel a finding that Plaintiffs have put the privileged communications related to the discovery of fraud "at issue", when the plaintiffs do not intend to rely on those privileged communications at trial and concludes that the second prong of the *Amlani* test has not been met.

### 3. Whether Allowing the Privilege Would Deny the Opposing Party Access to Information Vital to its Defense

But even if the privileged information were "at issue", the Special Master finds that the third and final prong of *Amlani* is not satisfied here. Under the third prong of *Amlani*, the court evaluates whether "allowing the privilege would deny the opposing party access to information vital to its defense." *Id.* "[P]rivileged communications do not become discoverable simply because they are related to issues raised in the litigation." *Amlani, supra,* 169 F.3d at 1195, citing *Southern Cal. Gas Co. v. Public Utilities Comm'n* (1990) 50 Cal.3d 31 (internal quotation omitted). "When the sought-after evidence is only one of several forms of indirect evidence' about an issue, the privilege has not been waived." *Id.* (internal citations omitted).

While Tutor Saliba might learn something about what the City knew prior to 1999 about the alleged fraud from deposing the city's attorneys, a party must show more than that it would be "useful and convenient" to obtain information from an opponent's lawyers. *Standard Chartered Bank PLC v. Ayala Int'l Holdings (U.S.) Inc.,* 111 F.R.D. 76, 81 (S.D.N.Y. 1986); *see also Chase Manhattan, supra,* 587 F.Supp. at 58 (finding that "[w]hile it may be useful to Andersen to know the substance of the [legal] advice Chase received concerning its liability on the transaction, I do not believe that the communications are essential to establish of what a reasonably prudent bank should have known and should have done under the circumstances" and thus the 3rd prong of *Amlani* was not met). The party seeking to pierce the privilege must show that "the protected

---

³ Nor does the Missouri case of *American Standard Inc. v. Bendix Corp.,* 80 F.R.D. 706 (W.D. Mo. 1978), change the analysis here. In *American Standard,* although not clear, it appears that the plaintiff intended to rely on the testimony of its trial attorney at trial thus putting the attorney's knowledge of the fraud "at issue." In addition, the Court called the attorney an "expert" and concluded that the defendant had no alternate source from which to prove its statute of limitations defense. Thus, unlike here, the third prong of the *Amlani* test was satisfied. *See* Discussion *infra.*

F.Supp. 1201, 1205 (S.D. Ind. 1994).

Here, the record suggests that the information necessary for Tutor Saliba's statute of limitations defense is available from other sources. To evaluate whether the City knew or should have reasonably suspected the alleged fraud before the expiration of the statute of limitations, Tutor Saliba must look at what City and Airport officials knew before the expiration of the limitations period. Work product and the attorney client privilege do not shield facts known to Airport officials, and if asked in depositions, those facts must be disclosed. *Standard Chartered Bank PLC,* 111 F.R.D. at 81. The City contends that Defendants have not yet noticed the deposition of any City official to find out what information they had about the alleged fraud prior to the running of the statute. The Special Master will not allow the piercing of the privilege before it is clear that the attorneys are the "sole source" of information "vital" to Defendants' statute of limitations defense.

Further, *Hearn* and the cases adopting its three prong test, are rooted in the concept that a waiver of the attorney client privilege will only be implied if allowing the privilege to protect against disclosure of the subject information would be "manifestly unfair to the opposing party." *Hearn, supra,* 68 F.R.D. at 581. Here, it is not clear that allowing the privilege to stand would be "manifestly unfair" to Tutor Saliba. Tutor Saliba has not attempted to obtain the information they need to prosecute their statute of limitations defense from other sources. This must happen before any privilege is pierced.

This finding under the third prong of *Amlani* applies equally to the discovery of work product. Work product of opposing counsel can only be obtained on a showing of substantial need and undue hardship. Fed.R.Civ.P. 26(b)(3). For the same reasons articulated above, Defendants have not established substantial need for the information sought.

### Order

Tutor Saliba's Motion to Compel the Depositions of Plaintiffs' Attorneys is DENIED.

IT IS SO ORDERED.
February 3, 2006

HON. DANIEL M. HANLON (Ret.)
Special Master

ORDER DENYING TUTOR SALIBA'S MOTION TO COMPEL PLAINTIFFS' COMPLIANCE WITH      8
LOCAL RULE 37-1 AND FOR THE SETTING OF THE DEPOSITIONS OF THERESE STEWART, AVE
TUCKER, TOM CARUSO, DAVID NORMAN, JOANNE HOEPER FOR DATES IN JANUARY 2006